# Supreme Court of Florida

_____

No. SC16-381
_____

**GAINESVILLE WOMAN CARE, LLC, et al.,**
Petitioners,

vs.

**STATE OF FLORIDA, et al.,**
Respondents.

[February 16, 2017]

PARIENTE, J.

The issue in this case is whether the trial court properly applied strict scrutiny when reviewing the Mandatory Delay Law, which imposes an additional twenty-four hour waiting period on women seeking to terminate their pregnancies. See ch. 2015-118 § 1, Laws of Fla. (codified at § 390.0111(3), Fla. Stat. (2015)) ("Mandatory Delay Law"). The Mandatory Delay Law implicates the Florida Constitution's express right of privacy. In Florida, any law that implicates the fundamental right of privacy, regardless of the activity, is subject to strict scrutiny and, therefore, presumptively unconstitutional. Accordingly, we hold that the trial

court correctly applied strict scrutiny in reviewing the Mandatory Delay Law's constitutionality.

We conclude that the First District Court of Appeal misapplied and misconstrued our precedent by placing the initial evidentiary burden on Petitioners to prove a "significant restriction" on Florida's constitutional right of privacy before subjecting the Mandatory Delay Law to strict scrutiny. State v. Gainesville Woman Care, LLC, 187 So. 3d 279, 282 (Fla. 1st DCA 2016).[1] Put simply, there is no additional evidentiary burden on challengers to establish by sufficient, factually supported findings showing a law imposes a "significant restriction" on the right of privacy before a law that implicates the right of privacy is subjected to strict scrutiny.

Florida's constitutional right of privacy contained in article I, section 23, establishes the right of every person to "be let alone and free from governmental

---

[1]. We have jurisdiction based on the First District Court of Appeal's misapplication of our precedent in North Florida Women's Health & Counseling Services, Inc. v. State, 866 So. 2d 612 (Fla. 2003), and In re T.W., 551 So. 2d 1186 (Fla. 1989), regarding strict scrutiny review of statutes that infringe on the right of privacy. Art. V, § 3(b)(3), Fla. Const.; see also Engle v. Liggett Grp., Inc., 945 So. 2d 1246, 1254 (Fla. 2006) (identifying misapplication of precedent as one means of supplying conflict jurisdiction); Aguilera v. Inservices., Inc., 905 So. 2d 84, 86 (Fla. 2005) (same); Robertson v. State, 829 So. 2d 901, 904 (Fla. 2002) (same); Vest v. Travelers Ins. Co., 753 So. 2d 1270, 1272 (Fla. 2000) (same); State v. Stacey, 482 So. 2d 1350, 1350 (Fla. 1985) (same); Arab Termite & Pest Control of Fla., Inc. v. Jenkins, 409 So. 2d 1039, 1040 (Fla. 1982) (same).

intrusion into [one's] private life." Art. I, § 23, Fla. Const. Because the right of privacy is a fundamental right within Florida's constitution, this Court consistently has required that any law intruding on this right is presumptively unconstitutional and must be justified by a "compelling state interest" which the law serves or protects through the "least restrictive means." Winfield v. Div. of Pari-Mutuel Wagering, Dep't of Bus. Regulation, 477 So. 2d 544, 547 (Fla. 1985); see also N. Fla. Women's Health & Counseling Servs., Inc. v. Florida, 866 So. 2d 612, 632 (Fla. 2003); In re T.W., 551 So. 2d 1186, 1191-92 (Fla. 1989).

Because the Mandatory Delay Law infringes on a woman's right of privacy, the State bore the burden at the temporary injunction hearing to prove that the Mandatory Delay Law survives strict scrutiny. The State, however, presented no evidence of a compelling state interest, much less that the law served such an interest through the least restrictive means. In addition, the First District disregarded the fact that the challengers did present evidence, which the trial court properly relied on, that the Mandatory Delay Law would result in additional costs and additional trips to the physician and that any delay could affect the type of procedure being performed.

Beyond placing an additional initial evidentiary burden on Petitioners, the First District also misinterpreted and misconstrued our precedent concerning the right of privacy by requiring, on remand, that the trial court consider a list of

speculative state interests, none of which this Court has ever recognized as compelling. <u>Gainesville Woman Care</u>, 187 So. 3d at 282. The trial court, on the other hand, correctly applied strict scrutiny in determining Petitioners' likelihood of success on the merits because the law, both facially and based on evidence presented, clearly infringes on the constitutional right of privacy. Petitioners presented unrebutted evidence establishing that the Mandatory Delay Law impedes a woman's ability to terminate her pregnancy for at least an additional twenty-four hours and requires the woman to make a second, medically unnecessary trip, which adds additional costs and delay. As Dr. Christine Curry stated in a verified affidavit, which the trial court considered:

> Such delays may push women past the gestational limit when medication abortion is available. This will force women for whom a medication abortion is clinically indicated to undergo a procedure that is less safe for them. It will also force a woman who prefers a medication abortion for psychological reasons to undergo a surgical abortion, which may harm her emotional and psychological state, and this pertains especially to victims of sexual trauma. In other cases, delays may push women past the gestational limit of the nearest abortion provider, forcing them to travel farther. This, in turn, is very likely to create further delay, increasing the risks of the procedure.

Some may disagree and argue that the State should force women to endure an additional twenty-four hour waiting period after they have chosen to terminate their pregnancy, regardless of the fact that such a waiting period is not required of any other medical procedure including those gynecological procedures that are far more risky than termination of pregnancy. Whether it is a good idea to mandate

- 4 -

that women seeking to terminate their pregnancies wait a minimum of an additional twenty-four hours before allowing them to receive medical treatment is not the point. As Petitioners cogently explain, women may take as long as they need to make this deeply personal decision both before and after they receive the state-mandated information. But through the Mandatory Delay Law, the State impermissibly interferes with women's fundamental right of privacy by mandating an additional twenty-four hour waiting period before a woman may exercise her decision after receiving all of the information the state deems necessary to make an educated and informed decision.

We recognize that a woman's right to choose remains a highly emotional issue that still divides our country many decades after the United States Supreme Court's decision in <u>Roe v. Wade</u>, 410 U.S. 113 (1973). Indeed, a substantial minority in this country believe that women should have no right to choose to terminate a pregnancy at any time after conception.[2] We emphasize that this case has nothing to do with when the State's interest in restricting women's right to choose to terminate a pregnancy based on the viability of the fetus becomes compelling.

---

2. <u>See</u> <u>Abortion</u>, Gallup, http://www.gallup.com/poll/1576/abortion.aspx (last visited Feb. 1, 2017) (finding that, as of May 2016, nineteen percent of the country believe that abortion should be illegal under all circumstances).

We agree with the trial court that, based on this Court's precedent, Petitioners have established a substantial likelihood of success on the merits, one of the requirements of granting a temporary injunction, as well as all other grounds for the entry of a temporary injunction. For reasons more fully explained below, we quash the First District's decision with instructions that the temporary injunction and accompanying stay of the Mandatory Delay Law remain in effect pending a hearing on Petitioners' request for a permanent injunction.

## FLORIDA'S MANDATORY DELAY LAW

Florida's general informed consent law requires that, for a patient to give valid, informed consent to any medical treatment in Florida, the health care professional must conform to "an accepted standard of medical practice among members of the medical profession" and provide information conveying three things: (1) the nature of the procedure, (2) the medically acceptable alternatives to the procedure, and (3) the procedure's substantial risks. § 766.103(3)(a)1.-2., Fla. Stat. (2016). In addition, in 1997, the Florida Legislature passed the "Woman's Right to Know Act," an informed consent statute specific to procedures involving the termination of pregnancies. Ch. 97-151, Laws of Fla. This Court upheld the Woman's Right to Know Act in 2006, only after the State conceded to a limiting interpretation of the law and this Court interpreted the law to require physicians to discuss only <u>medical risks</u> of either terminating or continuing the pregnancy and

that the scope of the advice was patient-driven.  See State v. Presidential Women's

Ctr., 937 So. 2d 114, 120 (Fla. 2006).

The Woman's Right to Know Act requires the physician to inform the

patient of "[t]he nature and risks of undergoing or not undergoing" the termination

of pregnancy procedure, "[t]he probable gestational age of the fetus," and some

other, additional information.  See § 390.0111(3)(a), Fla. Stat. (2015).  In 2015, the

Florida Legislature amended the Woman's Right to Know Act to require that a

woman be given the statutorily required information at least twenty-four hours

prior to the termination of pregnancy procedure.  Ch. 2015-118 § 1, Laws of Fla.

(codified at § 390.0111(3)).  These amendments constitute the Mandatory Delay

Law.[3]

_____

3.  Florida Law currently only allows third-trimester abortions under the
following two conditions:

(a)  Two physicians certify in writing that, in reasonable medical
judgment, the termination of the pregnancy is necessary to save the
pregnant woman's life or avert a serious risk of substantial and
irreversible physical impairment of a major bodily function of the
pregnant woman other than a psychological condition.

(b)  The physician certifies in writing that, in reasonable medical
judgment, there is a medical necessity for legitimate emergency
medical procedures for termination of the pregnancy to save the
pregnant woman's life or avert a serious risk of imminent substantial
and irreversible physical impairment of a major bodily function of the
pregnant woman other than a psychological condition, and another
physician is not available for consultation.

The Mandatory Delay Law does not require a woman to receive any new information beyond what the Woman's Right to Know Act requires. As amended, section 390.0111(3)(a) states:

> (3)  CONSENTS REQUIRED.—A termination of pregnancy may not be performed or induced except with the voluntary and informed written consent of the pregnant woman or, in the case of a mental incompetent, the voluntary and informed written consent of her court-appointed guardian.
>
> (a)  Except in the case of a medical emergency, consent to a termination of pregnancy is voluntary and informed only if:
> 1.  The physician who is to perform the procedure, or the referring physician, has, at a minimum, orally, <u>while physically present in the same room, and at least 24 hours before the procedure</u> in person, informed the woman of:
> a.  The nature and risks of undergoing or not undergoing the proposed procedure that a reasonable patient would consider material to making a knowing and willful decision of whether to terminate a pregnancy.
> b.  The probable gestational age of the fetus, verified by an ultrasound, at the time the termination of pregnancy is to be performed.
> (I)  The ultrasound must be performed by the physician who is to perform the abortion or by a person having documented evidence that he or she has completed a course in the operation of ultrasound equipment as prescribed by rule and who is working in conjunction with the physician.

---

§ 390.0111(1), Fla. Stat. (2016). However, the Mandatory Delay Law contains an exception that allows the physician to forego the twenty-four hour waiting period "[i]f a medical emergency exists and a physician cannot comply with the requirements for informed consent." Id. § 390.0111(3)(b). This exception would certainly be satisfied in the context of post-viability abortions. Accordingly, the requirements of the Mandatory Delay Law, generally, will only apply to first- and second-trimester abortions.

(II)  The person performing the ultrasound must offer the woman the opportunity to view the live ultrasound images and hear an explanation of them. . . .

(III)  The woman has a right to decline to view and hear the explanation of the live ultrasound images after she is informed of her right and offered an opportunity to view the images and hear the explanation.  If the woman declines, the woman shall complete a form acknowledging that she was offered an opportunity to view and hear the explanation of the images but that she declined that opportunity.  The form must also indicate that the woman's decision was not based on any undue influence from any person to discourage her from viewing the images or hearing the explanation and that she declined of her own free will.

(IV)  [Exceptions to the ultrasound when the] woman is obtaining the abortion because the woman is a victim of rape, incest, domestic violence, or human trafficking or that the woman has been diagnosed as having a condition that, on the basis of a physician's good faith clinical judgment, would create a serious risk of substantial and irreversible impairment of a major bodily function if the woman delayed terminating her pregnancy.

c.  The medical risks to the woman and fetus of carrying the pregnancy to term.
The physician may provide the information required in this subparagraph within 24 hours before the procedure if requested by the woman at the time she schedules or arrives for her appointment to obtain an abortion and if she presents to the physician a copy of a restraining order, police report, medical record, or other court order or documentation evidencing that she is obtaining the abortion because she is a victim of rape, incest, domestic violence, or human trafficking.

2.  Printed materials prepared and provided by the department have been provided to the pregnant woman, if she chooses to view these materials, including:

a.  A description of the fetus, including a description of the various stages of development.

b.  A list of entities that offer alternatives to terminating the pregnancy.

c.  Detailed information on the availability of medical assistance benefits for prenatal care, childbirth, and neonatal care.

3.  The woman acknowledges in writing, before the termination of pregnancy, that the information required to be provided under this subsection has been provided.

Nothing in this paragraph is intended to prohibit a physician from providing any additional information which the physician deems material to the woman's informed decision to terminate her pregnancy.

Ch. 2015-118, § 1, Laws of Fla. (deletions indicated by strike-through type and additions indicated by underline) (codified at § 390.0111(3)(a), Fla. Stat. (2015)).

**THE TEMPORARY INJUNCTION AND THE FIRST DISTRICT OPINION**

Shortly after the Mandatory Delay Law's enactment, on June 11, 2015, Petitioners, Gainesville Woman Care, LLC, and Medical Students for Choice (collectively referred to as "GWC"), filed a complaint in the Second Judicial Circuit challenging the validity of the Mandatory Delay Law as a violation of the privacy rights of Florida women under article I, section 23, of the Florida Constitution, and as a violation of GWC's and its patients' rights of equal protection of the laws of the State of Florida under article I, section 2, of the Florida Constitution. The same day, GWC filed a Motion for an Emergency Temporary Injunction and/or Temporary Injunction grounded solely on the right of privacy challenge set forth in their complaint. The trial court held an evidentiary hearing relating to GWC's request for a temporary injunction on June 25, 2015. The parties agreed that the trial court would consider the pleadings, together with the declarations filed with GWC's motion and supplemental reply, and that the

parties would be authorized, but not required, to present any additional evidence at that time.

At the evidentiary hearing, both parties presented legal arguments. Additionally, GWC submitted the verified affidavit of Dr. Christine L. Curry as supplemental evidence that the Mandatory Delay Law was unconstitutional. The State did not present any evidence to counter Dr. Curry's assertions. In her affidavit, Dr. Curry stated that abortion is one of the safest medical procedures in the United States. Indeed, Dr. Curry asserted that a woman is approximately fourteen times more likely to die from childbirth than during an abortion. Dr. Curry also opined that, in her experience, "whatever a woman's reasons for terminating a pregnancy, she makes the decision thoughtfully after much consideration and deliberation with those she includes in her process: her family, friends, and/or physician." Finally, Dr. Curry stated:

> 14. The [Mandatory Delay Law] singles out abortion procedures from all other medical procedures to impose a twenty-four-hour delay and an additional-trip requirement, with no medical benefit to the patient. . . . It is my opinion that by forcing women seeking abortions—but not patients seeking any other medical procedure, including those riskier than abortion—to wait twenty-four hours and to make an additional visit to the medical provider before they can obtain the treatment, the [Mandatory Delay Law] will harm Florida women seeking abortion and undermine the physician-patient relationship. It will prevent physicians from administering the care they believe will protect their patients' well-being.
> 15. By forcing women to delay the procedure at least twenty-four hours and to make arrange[sic] for an additional trip to a provider, the [Mandatory Delay Law] will cause women to delay their

- 11 -

abortion by at least one day, and in some cases, even longer. Such delays may push women past the gestational limit when medication abortion is available. This will force women for whom a medication abortion is clinically indicated to undergo a procedure that is less safe for them. It will also force a woman who prefers a medication abortion for psychological reasons to undergo a surgical abortion, which may harm her emotional and psychological state, and this pertains especially to victims of sexual trauma. In other cases, delays may push women past the gestational limit of the nearest abortion provider, forcing them to travel farther. This, in turn, is very likely to create further delay, increasing the risks of the procedure.

On July 1, 2015, the trial court issued its order granting GWC's request for a temporary injunction. In its order, the trial court explained:

> Defendants concede the unavailability of an adequate remedy at law if the law goes into effect and is found to be unconstitutional. This Court's decision on whether Plaintiffs have carried their burden to show that they are likely to succeed on their position that the constitutional right to privacy is implicated by [the Mandatory Delay Law], and if so, whether the Defendants have sufficiently shown that [the Mandatory Delay Law] meets the "strict" scrutiny standards required will provide the answers to whether there is irreparable harm and determine the public interest issue. In simple terms, the question presented to this Court is whether Plaintiffs have sufficiently shown that the requirements of [the Mandatory Delay Law] impose a "significant burden," as opposed to an insignificant burden, on a woman's right to an abortion.

Ultimately, the trial court concluded that "the Court has no evidence in front of it in which to make any factual determination that a 24-hour waiting period with the accompanying second trip necessitated by the same is not an additional burden on a woman's right of privacy under the [sic] Florida's Right of Privacy Clause," and consequently found that the Mandatory Delay Law infringed Florida women's

- 12 -

fundamental right of privacy. Accordingly, the trial court applied the strict scrutiny standard of review, shifting the burden to the State to prove that the law furthered a compelling state interest by the least restrictive means. To that end, the trial court concluded:

> Defendants are clearly basing their defense of the legislation to [sic] the ruling of the Florida Supreme Court in State v. Presidential Woman's Center, 937 So. 2d 114 (Fla. 2006). Their logic is simplistic, but not necessarily incorrect. The legislature's right to require informed consent has been upheld as being grounded in the common law. Id. at 118. The Defendants' pleading clearly establishes that a number of states have a waiting period, although it is also clear that most, if not all, were established under the "undue burden" standard. See cases cited in Defendants' Response in Opposition, pp 10-11. What the Defendants have failed in any way to provide this Court is any evidence that there is a compelling state interest to be protected in enhancing the informed consent already required of women and approved by the Supreme Court of Florida in Presidential Woman's Center, supra. There are no findings of fact or statements of legislative intent set forth in [the Mandatory Delay Law]. After an evidentiary hearing, the Court has no evidence in front of it in which to make any factual determination that a 24-hour waiting period with the accompanying second trip necessitated by the same is not an additional burden on a woman's right of privacy under the Florida's Right of Privacy Clause.
> . . . .
> In this proceeding, the only evidence before the Court is that "Florida law does not require a twenty-four-hour waiting period for other gynecological procedures with comparable risk, or any other procedure I perform in my practice." Declaration of Christine Curry, M.D., Ph.D., p 4. This is a major issue in the case that the Defendants fail to address. Defendants simply state that thirteen other states have a waiting period and the United States Supreme Court has ruled it is not unconstitutional under federal law. However, our Supreme Court has clearly stated that federal law has no bearing on Florida's more extensive right of privacy.

The State appealed.  See Gainesville Woman Care, 187 So. 3d at 281.

Overturning the trial court's order granting the temporary injunction, the First

District concluded that the "trial court failed to set forth clear, definite, and

unequivocally sufficient factual findings supporting the three disputed elements of

an injunction."  Id.  The First District also took issue with the trial court's failure to

consider the State's arguments, stating:

> The trial court did not address the State's arguments, such as whether,
> in passing the privacy amendment in 1980, voters intended to deprive
> Florida and its citizens of the benefits of advances in medical
> knowledge and evolutions in federal law recognizing increasingly
> compelling state interests arising from, among other factors, the
> potentiality of life uniquely represented by the human fetus.
> Likewise, the trial court did not address the evidence of intent
> reflected in the State's many post-1980 laws and regulations specific
> to abortion; nor the evidence of voter intent reflected in the 2004
> adoption of article X, section 22, of the Florida Constitution, which in
> effect overruled North Florida Women's and authorized a requirement
> of parental notice of termination of a minor's pregnancy.

Id. at 282.

The First District concluded that the trial court erred by failing to consider

the compelling state interests advanced by the State, including:

> [P]roviding women a short time to reflect privately after receiving
> required relevant information, in maintaining the integrity of the
> medical profession by making that post-informed reflective time free
> from influence by a physician or clinic personnel, in protecting the
> unique potentiality of human life, in protecting the organic law of
> Florida from interpretations and impacts never contemplated or
> approved by Floridians or their elected representatives, and in
> protecting the viability of a duly-enacted state law.

- 14 -

Id. Finally, the First District held that the trial court's order was also deficient for "failing to address the legal requirements for a facial constitutional challenge to a statute." Id.

GWC petitioned this Court for review based on the First District having misapplied our precedent concerning the right of privacy in article I, section 23, of the Florida Constitution and, in so doing, specifically construing that provision of the Florida Constitution. Because the First District lifted the stay of the Mandatory Delay Law that had been in effect since the law was enacted, GWC also filed a motion to stay, which this Court granted.

## ANALYSIS

### Fundamental Right of Privacy

Article I, section 23, of the Florida Constitution, added by Florida voters in 1980, has remained unchanged since it was adopted. See art. I, § 23, Fla. Const. (1980). This Court has broadly interpreted that right, stating:

> The citizens of Florida opted for more protection from governmental intrusion when they approved article I, section 23, of the Florida Constitution. This amendment is an independent, freestanding constitutional provision which declares the fundamental right to privacy. Article I, section 23, was intentionally phrased in strong terms. The drafters of the amendment rejected the use of the words "unreasonable" or "unwarranted" before the phrase "governmental intrusion" in order to make the privacy right as strong as possible. Since the people of this state exercised their prerogative and enacted an amendment to the Florida Constitution which expressly and succinctly provides for a strong right of privacy not found in the United States Constitution, it can only be concluded that

- 15 -

the right is much broader in scope than that of the Federal Constitution.

Winfield, 477 So. 2d at 548. In Winfield, the Court applied a strict scrutiny test in reviewing an attempt by the Pari-Mutuel Wagering Department of the Florida Department of Business and Professional Regulation to subpoena individuals' financial records because, the Court reasoned, subpoenaing the records intruded upon an individual's legitimate expectation of privacy as a matter of law. Id. The Court explained:

> The right of privacy is a fundamental right which we believe demands the compelling state interest standard. This test shifts the burden of proof to the state to justify an intrusion on privacy. The burden can be met by demonstrating that the challenged regulation serves a compelling state interest and accomplishes its goal through the use of the least intrusive means.

Id. at 547; see State v. J.P., 907 So. 2d 1101, 1009 (Fla. 2004) ("When a statute or ordinance operates to the disadvantage of a suspect class or impairs the exercise of a fundamental right, then the law must pass strict scrutiny."). Thus, while the Federal Constitution, at the very least, requires the recognition and protection of an implicit right of privacy, Florida voters have clearly opted for a broader, explicit protection of their right of privacy. Indeed, Florida voters rejected a constitutional amendment in 2012 that would have interpreted Florida's explicit constitutional

right of privacy as being no broader than the implicit federal constitutional right of privacy.[4]

This Court applies strict scrutiny to any law that implicates the fundamental right of privacy. State v. J.P., 907 So. 2d at 1109. For instance, in J.P., reviewing the constitutionality of juvenile curfew ordinances, this Court stated: "When a statute or ordinance operates to the disadvantage of a suspect class or impairs the exercise of a fundamental right, then the law must pass strict scrutiny." Id. This Court has also applied strict scrutiny in the context of reviewing grandparent visitation laws. See Von Eiff v. Azicri, 720 So. 2d 510, 514 (Fla. 1998) ("When analyzing a statute that infringes on the fundamental right of privacy, the applicable standard of review requires that the statute survive the highest level of scrutiny."); Beagle v. Beagle, 678 So. 2d 1271, 1275-77 (Fla. 1996) (finding that the imposition of grandparent visitation laws by the State clearly implicated the right of privacy and applying strict scrutiny to conclude that the law was facially unconstitutional).

Florida courts first addressed Florida's constitutional right of privacy in the termination of pregnancy context in In re T.W., 551 So. 2d 1186 (Fla. 1989). In

---

4. See Initiative Information: Prohibition on Public Funding of Abortions; Construction of Abortion Rights, Fla. Dep't of State, Division of Elections, http://dos.elections.myflorida.com/initiatives/initdetail.asp?account=10&seqnum=82 (last visited Feb. 1, 2017).

T.W., the Court reviewed the constitutionality of the Parental Consent Act, which required a minor to either obtain parental consent before terminating her pregnancy or prove to the courts that she was sufficiently mature to make the decision herself, or if immature, that terminating her pregnancy was in her best interest. Id. at 1188-89. This Court applied strict scrutiny and ultimately declared the law unconstitutional, stating:

> Florida's privacy provision is clearly implicated in a woman's decision of whether or not to continue her pregnancy. We can conceive of few more personal or private decisions concerning one's body that one can make in the course of a lifetime, except perhaps the decision of the terminally ill in their choice of whether to discontinue necessary medical treatment.

Id. at 1192.

Following T.W., this Court reviewed the constitutionality of a similar statute in North Florida Women's Health & Counseling Services, Inc. v. State, 866 So. 2d 612 (Fla. 2003). In that case, the Court reviewed the constitutionality of the Parental Notice of Abortion Act, which required a minor to notify a parent of her decision to terminate her pregnancy, or alternatively convince a court that she was sufficiently mature to make the decision herself, prior to terminating her pregnancy. Id. at 615. Explaining our holding in T.W., this Court stated in North Florida Women's:

> The Court ultimately held [in T.W.] that (a) if a legislative act imposes a significant restriction on a woman's (or minor's) right to seek an abortion, the act must further a compelling State interest

through the least intrusive means; (b) the Parental Consent Act imposed a significant restriction on a minor's right to seek an abortion; and (c) in light of the Legislature's less restrictive treatment of minors in other comparable procedures and practices, the Act failed to "further" a compelling State interest.

Id. at 621. The Court ultimately determined that the act was unconstitutional and in so doing, reaffirmed the strict scrutiny standard applied in T.W. N. Fla. Women's, 866 So. 2d at 622, 639.

Importantly, also in North Florida Women's, this Court rejected the use of the federal "undue burden" standard announced by the United States Supreme Court in Planned Parenthood of Southeastern Pennsylvania v. Casey, 505 U.S. 833, 874 (1992), in light of Florida's more encompassing, explicit constitutional right of privacy. This Court unequivocally explained that the "undue burden" standard from Casey was "inherently ambiguous" and had no basis in Florida's constitutional right of privacy:

> First, any comparison between the federal and Florida rights of privacy is inapposite in light of the fact that there is no express federal right of privacy clause. . . .
> And second, it is settled in Florida that each of the personal liberties enumerated in the Declaration of Rights is a fundamental right. Legislation intruding on a fundamental right is presumptively invalid and, where the right of privacy is concerned, must meet the "strict" scrutiny standard. Florida courts have consistently applied the "strict" scrutiny standard whenever the Right of Privacy Clause was implicated, regardless of the nature of the activity. The "undue burden" standard, on the other hand, is an inherently ambiguous standard and has no basis in Florida's Right of Privacy Clause.

- 19 -

N. Fla. Women's, 866 So. 2d at 634-35 (second emphasis added) (footnotes omitted).

The above cases make clear that any law that implicates Florida's right of privacy will be subject to strict scrutiny review. Florida's constitutional right of privacy encompasses a woman's right to choose to end her pregnancy. This right would have little substance if it did not also include the woman's right to effectuate her decision to end her pregnancy. As this Court demonstrated in T.W. and North Florida Women's, laws that place the State between a woman, or minor, and her choice to end her pregnancy clearly implicate the right of privacy. For instance, the law at issue in T.W. prevented a minor from terminating her pregnancy without either parental consent or satisfying a judicial bypass procedure. 551 So. 2d at 1189. However, the law did not completely forbid minors from terminating their pregnancies; it merely placed an additional obstacle in a minor's way, causing the minor additional hardship and delay in effectuating her decision. Similarly, the law at issue in North Florida Women's required a minor to notify her parents prior to terminating her pregnancy, or convince a court that she need not do so. 866 So. 2d at 615. Again, this law only imposed additional requirements before a minor could terminate her pregnancy, but did not prevent the minor from undergoing the actual procedure for any period of time.

Moreover, a petitioner need not present additional evidence that the law intrudes on her right of privacy if it is evident on the face of the law that it implicates this right. Indeed, this Court has repeatedly applied strict scrutiny to laws that intrude upon an individual's fundamental right of privacy without first requiring in-depth factual findings about the extent of the burden imposed by the law. See, e.g., T.M. v. State, 784 So. 2d 442, 443-44 (Fla. 2001) (agreeing that strict scrutiny applies to juvenile curfew ordinances without any discussion of the percentage of juveniles who would be exempt from the curfew or whether those juveniles who were subject to the curfew would in fact be harmed by six- or seven-hour restrictions on travel); Beagle, 678 So. 2d at 1275 ("Certainly the imposition, by the State, of grandparental visitation rights implicates the privacy rights of the Florida Constitution."); Winfield, 477 So. 2d at 548 (applying strict scrutiny to administrative subpoena of financial records without any discussion of the potential burden posed by their release because subpoenaing the records intruded upon an individual's legitimate expectation of privacy as a matter of law).

**Whether Strict Scrutiny Review Requires that the Challenger Establish a Significant Restriction**

Although this Court has made clear that those who challenge laws implicating the fundamental right of privacy are not first required to establish an undue burden or significant restriction, the parties dispute whether there is a threshold requirement applicable only to challenges to laws involving the decision

to terminate a pregnancy that the law operate as a "significant restriction" on that right before strict scrutiny applies. The First District held and the State maintains that the trial court must "make <u>sufficient factually-supported findings</u> about the existence of a significant restriction on a woman's right to seek an abortion." <u>Gainesville Woman Care</u>, 187 So. 3d at 282 (emphasis added).

To support its argument, the First District and the State primarily rely on language from a discussion in <u>T.W.</u> regarding when the State's interest in maternal health becomes compelling. In that discussion, this Court stated:

> We nevertheless adopt the end of the first trimester as the time at which the state's interest in maternal health becomes compelling under Florida law because it is clear that prior to this point no interest in maternal health could be served by significantly restricting the manner in which abortions are performed by qualified doctors, whereas after this point the matter becomes a genuine concern. Under Florida law, prior to the end of the first trimester, the abortion decision must be left to the woman and may not be significantly restricted by the state. Following this point, the state may impose significant restrictions only in the least intrusive manner designed to safeguard the health of the mother. Insignificant burdens during either period must substantially further important state interests.

<u>T.W.</u>, 551 So. 2d at 1193 (footnote omitted) (citations omitted). To the extent the Court used the term "significant restriction," it was borrowing from the United States Supreme Court opinion in <u>City of Akron v. Akron Center for Reproductive Health, Inc.</u>, 462 U.S. 416 (1983), which provided that medical record-keeping and neutral informed consent laws would have "no significant impact" on a woman's right to choose. <u>Id.</u> at 430-31. This Court was merely clarifying that prior to the

end of the first trimester, the State was not permitted to restrict a woman's right to choose to terminate her pregnancy. Put into the appropriate context, it is clear that T.W. in no way created a threshold requirement that a challenger must prove through sufficient, factually supported findings that a law imposes a significant restriction on a woman's right of privacy before the law is reviewed under strict scrutiny.

Likewise, the Court has not required an additional evidentiary prerequisite before strict scrutiny applies in other cases implicating the right of privacy, or any other context where strict scrutiny is appropriate. To single out the instance in which a woman chooses to end her pregnancy to apply this additional evidentiary burden would contradict our precedent emphasizing the importance of Florida's fundamental right of privacy.

Finally, the significant restriction requirement that the State maintains is appropriate would equate the Florida constitutional inquiry in the termination of pregnancy context to the federal "undue burden" test. See Casey, 505 U.S. at 877. This cannot be. As explained above, this Court explicitly rejected the federal standard in North Florida Women's, which requires that a petitioner prove that a regulation has the purpose of placing a substantial obstacle in the path of a woman seeking to terminate her pregnancy. Casey, 505 U.S. at 877; 866 So. 2d at 634-35. Clearly we did not endorse substantially the same standard, disguised as a

threshold requirement, in the same case where we specifically rejected the federal "undue burden" standard.

To the extent there is any doubt or confusion regarding our precedent, we clarify that there is no threshold requirement that a petitioner must show by "sufficient factual findings" that a law imposes a significant restriction on a woman's right of privacy before strict scrutiny applies to laws that implicate the right of privacy. Any law that implicates the right of privacy is presumptively unconstitutional, and the burden falls on the State to prove both the existence of a compelling state interest and that the law serves that compelling state interest through the least restrictive means. Winfield, 477 So. 2d at 547.

**The Effect of Presidential Women's Center on Florida's Constitutional Right of Privacy**

The State, before the trial court, the First District, and this Court has argued that because this Court did not discuss the right of privacy or strict scrutiny when upholding the Woman's Right to Know Act in 2006, we implicitly determined that the right of privacy was not implicated by the Woman's Right to Know Act. However, that contention ignores that the Court upheld the Woman's Right to Know Act only after the State made clear that the law required the physician to discuss only medical risks of either terminating or continuing the pregnancy and that the scope of the advice was patient-driven:

- 24 -

As this litigation developed, and during oral argument, the State has agreed and conceded that this subsection applies solely and exclusively to information with regard to medical risks—not information with regard to social, economic, or any other risks. The doctrine of medical informed consent is rooted in the concepts of bodily autonomy and integrity, see Chambers[v. Nottebaum], 96 So. 2d [716,][]719 [(Fla. 3d DCA 1957)], and it is logical that physicians be required to inform the patient only and exclusively of the medical risks of terminating or not terminating a pregnancy. Physicians are not sociologists, economists, theologians, or philosophers, and it is implausible to conclude that the Legislature intended that physicians be required to venture far beyond their professional specialty and expertise to advise patients of nonmedical matters merely because the word "medical" is not specifically utilized in subsection (3)(a)(1)(a).

Presidential Women's Center, 937 So. 2d at 119-20.

As Justice Lewis, writing for the majority of the Court, explained in Presidential Women's Center, "[u]nder the doctrine of informed consent, a physician has an obligation to advise his or her patient of the material risks of undergoing a medical procedure." 937 So. 2d at 116. The doctrine of informed consent is a patient-driven doctrine and finds its roots in the concepts of bodily integrity and patient autonomy:

Under a free government, at least, the free citizen's first and greatest right, which underlies all others—the right to the inviolability of his person; in other words, the right to himself—is the subject of universal acquiescence, and this right necessarily forbids a physician or surgeon, however skillful or eminent, who has been asked to examine, diagnose, advise, and prescribe (which are at least necessary first steps in treatment and care), to violate, without permission, the bodily integrity of his patient by a major or capital operation, placing him under an anesthetic for that purpose, and operating upon him without his consent or knowledge. 1 Kinkead on Torts, § 375, states that general rule on this subject as follows: The patient must be the

- 25 -

final arbiter as to whether he will take his chances with the operation, or take his chances of living without it.

Id. at 116-17 (quoting Chambers, 96 So. 2d at 719).

As Justice Pariente's concurrence, which was joined by Justice Quince and Justice Anstead, made clear, it was because of this Court's interpretation of the law as a neutral informed consent law, which the State conceded was appropriate, that the law avoided any constitutional infirmity:

> The majority has construed section 390.0111(3)(a)(1), Florida Statutes (2005), to be a neutral informed consent statute that is comparable to other informed consent statutes and the common law from which they are derived. With the statute so limited, I concur in upholding its constitutionality. I write to emphasize that it is only because of two significant limitations placed on this provision by the majority that the Act is not facially unconstitutional, and that it was the State at oral argument that made these two substantial concessions limiting the interpretation of this statute. The first is that the "reasonable patient" is not a hypothetical patient but rather is the patient presenting herself for the procedure. The second is that subsection (3)(a)(1)(a) requires physicians to inform patients of only medical risks and not other types of risks such as social or economic risks.
> If the State had advanced these substantial limiting constructions from the outset, this case could have been resolved expeditiously either before the trial court or the Fourth District Court of Appeal. Without the benefit of these clear concessions from the State, I cannot fault the Fourth District for concluding that the plain language of the statute is unconstitutionally vague.

Id. at 121 (Pariente, J., concurring) (emphasis added).

The Woman's Right to Know Act does not prevent a woman from effectuating her decision to end her pregnancy, but, instead, merely requires that a

physician provide her with all of the information the physician and patient, together, deem necessary to help that specific patient make an informed decision. The important distinction here is that informed consent provisions are patient-driven and require a physician to provide the patient with the information the patient deems necessary to help facilitate informed decision-making. Indeed, in Presidential Women's Center, this Court limited the Women's Right to Know Act to "require a physician to consider only and exclusively the individual circumstances of each patient presenting herself for treatment in determining what information is material to that patient's decision." Id. at 119 (emphasis added). Put simply, the woman or minor remains in control of her decision and the law places no additional burden on that woman or minor effectuating her decision.

Therefore, we reject as unfounded any interpretation of Presidential Women's Center to stand for a broader proposition that the State may impose additional burdens over the existing medically centered, patient-specific, informed consent law before allowing a patient to undergo a procedure to terminate her pregnancy. The Mandatory Delay Law, as opposed to the Woman's Right to Know Act, turns informed consent on its head, placing the State squarely between a woman who has already made her decision to terminate her pregnancy and her doctor who has decided that the procedure is appropriate for his or her patient.

**This Case**

Having clarified that any law implicating the right of privacy is subject to strict scrutiny review, we now turn to whether the trial court properly applied our precedent in granting a temporary injunction in this case. To obtain a temporary injunction, the petitioner must satisfy a "four-part test under Florida law: a substantial likelihood of success on the merits; lack of an adequate remedy at law; irreparable harm absent the entry of an injunction; and that injunctive relief will serve the public interest." Reform Party of Fla. v. Black, 885 So. 2d 303, 305 (Fla. 2004). "The standard of review of trial court orders on requests for temporary injunctions is a hybrid. To the extent the trial court's order is based on factual findings, we will not reverse unless the trial court abused its discretion; however, any legal conclusions are subject to de novo review." Fla. High Sch. Athletic Ass'n v. Rosenberg, 117 So. 3d 825, 826 (Fla. 4th DCA 2013) (quoting Foreclosure FreeSearch, Inc. v. Sullivan, 12 So. 3d 771, 774 (Fla. 4th DCA 2009)).

Additionally, Florida Rule of Civil Procedure 1.610(c) states: "Every injunction shall specify the reasons for entry, shall describe in reasonable detail the act or acts restrained without reference to a pleading or another document, and shall be binding on the parties to the action, their officers, agents, servants, employees, and attorneys and on those persons in active concert or participation

with them who receive actual notice of the injunction." We discuss each of the prongs of the test in turn below.

Substantial Likelihood of Success on the Merits

In light of the discussion above, we conclude that the First District erred in several respects. First, the First District erred in admonishing the trial court for its failure to "make sufficient factually-supported findings about the existence of a significant restriction on a woman's right to seek an abortion." Gainesville Woman Care, 187 So. 3d at 282. Placing this initial burden on petitioners would undermine longstanding precedent on fundamental rights and strict scrutiny review. In fact, the Mandatory Delay Law, by its plain terms, requires that a woman be informed "at least 24 hours before the procedure" of certain information, thus prohibiting a woman from effectuating her decision to terminate her pregnancy until at least twenty-four hours after she is provided the information required by law, clearly impeding the exercise of her constitutional rights.

Further, notwithstanding the First District's assertions that the trial court made no findings with respect to the Mandatory Delay Law's effect on a woman's right of privacy, the trial court order states:

> Plaintiffs allege in the motion for temporary injunctive relief that:
>
> Absent injunctive relief from this Court, a sweeping restriction on Florida women's ability to access abortion services, unprecedented in this state, will take effect on

July 1, 2015. Section one of Florida House Bill 633, signed by Governor Scott last night (June 10, 2015) would require a woman seeking an abortion to make an additional, unnecessary trip to her health care provider at least twenty-four hours before obtaining an abortion, in order to receive the same information she may currently receive on the day of the procedure. (citation omitted) The Act's unnecessary and burdensome requirements are imposed regardless of the distance the woman must travel to reach her provider, her own medical needs, her judgment, her doctor's judgment, or her individual life circumstances. By subjecting no other medical procedure in Florida, much less a medical procedure protected by the state Constitution as a fundamental right—the Act can only serve to deter women from seeking abortions, and to punish and discriminate against . . . those who do.

Based upon the above information alleged by GWC and one additional affidavit submitted from Dr. Christine L. Curry, detailing the harm that the Mandatory Delay Law will cause to her patients, and in light of the absence of evidence presented to the contrary by the State, the trial court concluded: "The Court has no evidence in front of it in which to make any factual determination that a 24-hour waiting period with the accompanying second trip necessitated by the same is not an additional burden on a woman's right of privacy under the Florida's Right of Privacy Clause," and thus impedes all Florida women from exercising their fundamental right of privacy. (Emphasis added.)

Having concluded that the trial court was correct that the law implicated the right of privacy, we turn to review whether the trial court erred in finding that the

- 30 -

Mandatory Delay Law would be unlikely to survive strict scrutiny review. The

First District faulted the trial court, stating:

> The trial court did not address the State's arguments, such as whether, in passing the privacy amendment in 1980, voters intended to deprive Florida and its citizens of the benefits of advances in medical knowledge and evolutions in federal law recognizing increasingly compelling state interests arising from, among other factors, the potentiality of life uniquely represented by the human fetus. Likewise, the trial court did not address the evidence of intent reflected in the State's many post-1980 laws and regulations specific to abortion; nor the evidence of voter intent reflected in the 2004 adoption of article X, section 22, of the Florida Constitution, which in effect overruled North Florida Women's and authorized a requirement of parental notice of termination of a minor's pregnancy.

Gainesville Woman Care, 187 So. 3d at 282. GWC argues that this statement by

the First District was in error for two reasons: (1) the trial court did, in fact, make

findings regarding the State's lack of evidence presented regarding any compelling

state interest; and (2) this lengthy statement by the First District defies this Court's

precedent on what constitutes a compelling state interest. The State, of course,

contends that the First District's opinion is correct.

Because the Mandatory Delay Law, which impedes Florida women's

exercise of their fundamental rights, implicates the right of privacy, the trial court

was correct to conclude that strict scrutiny applies to this challenge. The case law

is clear: "A legislative act impinging on [the right of privacy] is presumptively

unconstitutional unless proved valid by the State." N. Fla. Women's, 866 So. 2d at

626. Thus, after the trial court made the threshold inquiry that the Mandatory

Delay Law implicated a woman's fundamental right of privacy, the burden in this case shifted to the State to prove that the law furthered a compelling state interest in the least restrictive way.

Contrary to the claims of the First District, the trial court made two findings critical to the strict scrutiny analysis in this case: (1) the State failed to provide any evidence that there is a compelling state interest to be protected by enhancing the informed consent provision; and (2) Florida law does not require a parallel restriction on medical procedures of comparable risk.

In its order, the trial court found, based upon the verified declaration of Dr. Christine Curry, that Florida law does not require enhanced informed consent for any other gynecological procedure. Specifically, the trial court found that the State failed to provide any compelling reason to enhance the informed consent provision or how the current informed consent provision was failing in some way. These findings make it clear that the trial court concluded the selective approach employed by the Legislature was evidence of the State's limited interest in this matter.

Similarly, in T.W., this Court reasoned that the State's selective approach in only requiring parental consent for termination of pregnancy procedures was evidence that the State lacked any compelling interest in enacting the law. 551 So. 2d at 1195. "Although the state does have an interest in protecting minors, 'the

selective approach employed by the legislature evidences the limited nature of the . . . interest being furthered by these provisions.' " Id. (quoting Ivey v. Bacardi Imports Co., 541 So. 2d 1129, 1139 (Fla. 1989)).  Moreover, this Court in North Florida Women's stated: "The fact that the Legislature has not chosen to require parental notification relating to other pregnancy-related conditions that are more dangerous than abortion" indicates that the purpose of the parental notification law is not to further a compelling interest in protecting minors' health but is "instead, . . . to infringe on the minor's right to choose an abortion."  866 So. 2d at 650-51.

As stated above, the trial court properly placed the burden on the State in this case to prove that the Mandatory Delay Law furthered a compelling state interest through the least restrictive means.  The trial court stated numerous times that the State failed to provide any evidence of a compelling state interest that would be furthered by enhancing the informed consent statute.  The First District's statement that the trial court failed "to make any findings regarding the State's compelling interests in support of this statute" is clearly in error.  Gainesville Woman Care, 187 So. 3d at 282.  The trial court found that the State failed to offer evidence of a compelling state interest in treating a woman who has chosen to terminate her pregnancy, unlike any other patient, as unable to determine for herself when she is ready to make an informed decision about her medical care; and this differential treatment undermines any purported state interest in ensuring

- 33 -

that women are adequately informed. It would make no sense to require a trial court to make factual findings regarding a state's compelling interest, as the First District would require, when the State presented no evidence from which a trial court could make such findings.

The Mandatory Delay Law impacts only those women who have already made the choice to end their pregnancies. Indeed, under Florida's pre-existing informed consent law, a woman can already take all of the time she needs to decide whether to terminate her pregnancy, both before she arrives at the clinic and after she receives the required counseling information. The State presented no evidence to indicate that the prior, neutral informed consent statute that this Court approved in Presidential Women's Center is inadequate and requires the revisions enacted by the Legislature. Nor are there any legislative findings explaining the compelling state interests at stake or indicating why the Legislature was compelled to amend the statute in order to support those interests.

Moreover, despite the State's contention that women will not be required to make two trips to the clinic by the new law because they can receive the information from their referring physician, the law, in fact, requires women to make a second trip to their health care provider at least twenty-four hours after their first visit. See § 390.0111, Fla. Stat. Even if the woman receives the required information from her referring doctor, as the State contends, she must still make

two trips: one to the referring physician and one to the abortion clinic at least twenty-four hours later. The challengers presented evidence that requiring a woman to make a second trip increases the likelihood that her choice to terminate her pregnancy will not remain confidential, which is particularly important, as amici assert, in the domestic violence and human trafficking context. Further, the delay is, at a minimum, twenty-four hours, but it may be considerably more if the doctor is not available or the date falls on a weekend. No other medical procedure, even those with greater health consequences, requires a twenty-four hour waiting period in the informed consent process.

Next, we also conclude that the First District erred when it admonished the trial court for failing to make findings regarding the State's compelling interests. The First District stated:

> The court failed to make any findings regarding the State's compelling interests in support of this statute, which the State has argued include compelling interests in providing women a short time to reflect privately after receiving required relevant information, in maintaining the integrity of the medical profession by making that post-informed reflective time free from influence by a physician or clinic personnel, in protecting the unique potentiality of human life, in protecting the organic law of Florida from interpretations and impacts never contemplated or approved by Floridians or their elected representatives, and in protecting the viability of a duly-enacted state law.

Gainesville Woman Care, 187 So. 3d at 282. This Court has never recognized that the State might have a compelling interest in "protecting the organic law of Florida

- 35 -

from interpretations and impacts never contemplated or approved by Floridians or their elected representatives" and in "protecting the viability of a duly-enacted state law." Id. Accordingly, the First District's holding that the trial court erred in failing to issue findings on such an interest would render the highest level of judicial review toothless in almost all cases because the State could be deemed to have a compelling interest in upholding any law, no matter how patently unconstitutional it may be.

The First District compounded this error by requiring that the trial court first consider what it referred to as the State's compelling interests in "providing women a short time to reflect privately after receiving required relevant information, in maintaining the integrity of the medical profession by making that post-informed reflective time free from influence by a physician or clinic personnel" and in "protecting the viability of a duly-enacted state law." The Mandatory Delay Law does not differentiate between stages of pregnancy in its application. Instead, it broadly operates any time that a woman is intending to terminate a pregnancy after conception. As to the "unique potentiality of human life," and the concern regarding the integrity of the medical profession, this law is part of the medical informed consent law that this Court has already held was a statute designed to inform the patient of only the medical risks of continuing or not continuing the pregnancy. This Court made clear in Presidential Women's Center

that "[t]he doctrine of medical informed consent is rooted in the concepts of bodily autonomy and integrity . . . and it is logical that physicians be required to inform the patient only and exclusively of the medical risks of terminating or not terminating a pregnancy."  937 So. 2d at 119 (emphasis added).  Such social and moral concerns have no place in the concept of informed consent.

Finally, in light of the discussion above, it was also error for the First District to insinuate that the voters in any way overruled our decision in North Florida Women's when they added article X, section 22, to the Florida Constitution in 2004.  Gainesville Woman Care, 187 So. 3d at 282 (faulting trial court for not addressing "the evidence of voter intent reflected in the 2004 adoption of article X, section 22, of the Florida Constitution, which in effect overruled North Florida Women's and authorized a requirement of parental notice of termination of a minor's pregnancy").  Article X, section 22, of the Florida Constitution is an extremely limited provision of the constitution, which deals solely with the issue of parental notification in the context of a minor choosing to terminate her pregnancy.  It was not added to the Declaration of Rights, nor did it amend the right of privacy in article I, section 23, of the Florida Constitution.  See art. X, § 22, Fla. Const.  In article X, section 22, the voters in no way altered this Court's core holding in North Florida Women's—laws that implicate the right of

privacy are subject to strict scrutiny—and it was error for the First District to improperly insinuate such a notion.

We conclude that the trial court's order correctly found, based on the evidence presented at the temporary injunction hearing, that there is a substantial likelihood that the Mandatory Delay Law is unconstitutional as a violation of Florida's fundamental right of privacy and consequently that Petitioners established a substantial likelihood of success on the merits in this case. Because the State conceded the lack of an adequate remedy at law,[5] we now turn to the last two prongs of the test for injunctive relief.

<u>Irreparable Harm Absent the Entry of an Injunction and That Injunctive Relief Will Serve the Public Interest</u>

The First District noted in its decision that the trial court's injunction was in error because:

> The trial court failed to set forth clear, definite, and unequivocally sufficient factual findings supporting the three disputed elements of an injunction (after the State essentially conceded inadequacy of any legal remedy). Indeed, the trial court here could not set forth the requisite evidence-supported factual findings because it had no legally sufficient evidentiary basis to do so. Without such clear and sufficient factual findings, supported by record evidence, the order is defective and meaningful review is not possible.

---

5. See <u>Gainesville Woman Care, LLC v. State</u>, No. 15-CA-1323, at 3 (Fla. 2d Cir. Ct. July 1, 2015) (Corrected Order Granting Plaintiff's Motion for Temporary Injunction) ("Defendants concede the unavailability of an adequate remedy at law if the law goes into effect and is [subsequently] found to be unconstitutional."); <u>see also</u> <u>Gainesville Woman Care</u>, 187 So. 3d at 281.

Gainesville Woman Care, 187 So. 3d at 281. GWC argues that the trial court correctly found that the elements of irreparable harm and public interest were established, after the State conceded the lack of an adequate remedy, because the trial court's determination that the law is likely unconstitutional provides the necessary support for the other prongs.

In its order, the trial court stated:

Defendants concede the unavailability of an adequate remedy at law if the law goes into effect and is found to be unconstitutional. This Court's decision on whether Plaintiffs have carried their burden to show that they are likely to succeed on their position that the constitutional right of privacy is implicated by [the Mandatory Delay Law], and if so, whether the Defendants have sufficiently shown that [the Mandatory Delay Law] meets the "strict" scrutiny standards required will provide the answers to whether there is irreparable harm and determine the public interest issue. In simple terms, the question presented to this Court is whether Plaintiffs have sufficiently shown that the requirements of [the Mandatory Delay Law] impose a "significant burden," as opposed to insignificant burden, on a woman's right to an abortion.

Thus, the trial court determined that a decision that the Mandatory Delay Law is unconstitutional would presume that there would be irreparable harm absent the entry of an injunction and that the public interest would be served by enjoining enforcement of the Mandatory Delay Law.

This Court has not previously addressed this question. However, the United States Supreme Court has stated that the "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."

- 39 -

Elrod v. Burns, 427 U.S. 347, 373 (1976). Additionally, both the federal courts and Florida district courts of appeal have presumed irreparable harm when certain fundamental rights are violated. See, e.g., Baker v. Buckeye Cellulose Corp., 856 F.2d 167, 169 (11th Cir. 1988) (irreparable harm presumed in Title VII cases); Cunningham v. Adams, 808 F.2d 815, 822 (11th Cir. 1987) (stating that the injury suffered by the plaintiff is irreparable only if cannot be undone through monetary remedies); Cate v. Oldham, 707 F.2d 1176, 1188 (11th Cir. 1983) (irreparable injury presumed from violation of First Amendment rights "for even minimal periods of time"); see also Tucker v. Resha, 634 So. 2d 756, 759 (Fla. 1st DCA 1994) (finding no legislative waiver of sovereign immunity as to the privacy provision of the Florida Constitution and therefore concluding that money damages are not available for violations of that right); Thompson v. Planning Comm'n of Jacksonville, 464 So. 2d 1231, 1237 (Fla. 1st DCA 1985) (where calculation of damages is speculative, legal remedy is inadequate).

In light of finding that the Mandatory Delay Law is likely unconstitutional, there is no adequate legal remedy at law for the improper enforcement of the Mandatory Delay Law. Thus, the Mandatory Delay Law's enactment would lead to irreparable harm, and it would be specious to require, as the First District suggests, that the trial court make additional factual findings that enjoining the law would also be in the public interest. Notwithstanding, the trial court found that

women seeking to terminate their pregnancies in Florida would be harmed by the enforcement of the Mandatory Delay Law, noting that GWC's pleadings and the declaration presented make clear that the law would require women seeking to terminate their pregnancies to make an additional, unnecessary trip to their health care provider and could impose additional harms by requiring a woman to delay the procedure or force her past the time limit for the procedure of her choice. The State presented no evidence in rebuttal. Clearly, enjoining the Mandatory Delay Law and thus preventing women from enduring the additional and unnecessary burdens it would impose upon them in violation of the Florida Constitution, would serve the public interest.

**Injunctive Relief Based on Facial Constitutional Challenge**

Finally, we turn to the issue of whether the trial court was correct to provide injunctive relief based on the likelihood that the Mandatory Delay Law is facially unconstitutional. The First District held:

> The order is also deficient in failing to address the legal requirements for a facial constitutional challenge to a statute, an issue the parties disputed below. The State advocated a "no-set-of-circumstances" test.
> Appellees argued that the "no circumstances" test does not apply in Florida abortion cases. Neither the record nor the order reflects whether the trial court applied the appropriate facial challenge analysis, and this omission thwarts meaningful appellate review of the injunction order.

- 41 -

Gainesville Woman Care, 187 So. 3d at 282. GWC asserts that the trial court's remedy of enjoining the Mandatory Delay Law as applied to all women was appropriate. The State contends that the First District was correct because GWC bases its allegations of harm on assumptions about unidentified women in hypothetical scenarios; but, in a facial challenge, this Court considers only the text of the statute, not its specific application to a particular set of circumstances. Gonzales v. Carhart, 550 U.S. 124, 167-68 (2007).

The State concedes that the United States Supreme Court has yet to rule on whether the "no-set-of-circumstances" test applies to facial challenges to restrictions on a woman's right to choose to terminate her pregnancy. However, the State notes that the United States Supreme Court has stated that, at the least, a facial challenge fails when plaintiffs "have not demonstrated that the Act would be unconstitutional in a large fraction of relevant cases." Id. Moreover, this Court has never applied the "no-set-of-circumstances" test to a facial constitutional challenge in the termination of pregnancy context.

The trial court's finding that the Mandatory Delay Law imposes a significant restriction on all women's fundamental right of privacy, by its plain terms, is sufficient to support an injunction barring the application of the law in its entirety. The trial court did not talk in terms of hypotheticals, nor did it look to the effect of the law on just some women. Rather, the trial court found that the law imposed

unconstitutional and unnecessary burdens on the fundamental right of privacy of all Florida women. Accordingly, the trial court did not err in not explicitly deciding the disputed issue of what standard is appropriate. Further, in examining previous restrictions on a woman's right to choose to terminate her pregnancy in T.W., North Florida Women's, and Presidential Women's Center, this Court both upheld and invalidated laws without any mention of a "no-set-of-circumstances" test. See Presidential Women's Ctr., 937 So. 2d at 115; N. Fla. Women's, 866 So. 2d at 626; T.W., 551 So. 2d at 1192-93.

## CONCLUSION

The trial court's findings with respect to all four of the prongs of the temporary injunction test were supported by competent, substantial evidence. Consequently, the trial court had the proper evidentiary basis to issue a temporary injunction in this case. Today we make clear, in Florida, any law that implicates the fundamental right of privacy, regardless of the activity, is subject to strict scrutiny and is presumptively unconstitutional. In this case, the State failed to present any evidence that the Mandatory Delay Law serves any compelling state interest, much less through the least restrictive means, and, therefore, the trial court correctly concluded that there is a substantial likelihood that the Mandatory Delay Law is unconstitutional. Accordingly, we quash the decision of the First District

- 43 -

below and remand this case back to the First District for instructions not inconsistent with this opinion.

It is so ordered.

LABARGA, C.J., and LEWIS, and QUINCE, JJ., concur.
CANADY, J., dissents with an opinion, in which POLSTON, J., concurs.
LAWSON, J., did not participate.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION, AND IF FILED, DETERMINED.

CANADY, J., dissenting.

Because I conclude that there is no basis for this Court to exercise jurisdiction, I would discharge this case. Contrary to the view adopted by the majority, the decision of the First District in State v. Gainesville Woman Care, LLC, 187 So. 3d 279 (Fla. 1st DCA 2016), does not expressly and directly conflict with North Florida Women's Health & Counseling Services, Inc. v. State, 866 So. 2d 612 (Fla. 2003), or In re T.W., 551 So. 2d 1186 (Fla. 1989). In view of the majority's decision on jurisdiction, I write to explain why the First District's decision should be affirmed on procedural grounds. I also write to explain why the majority's resolution of the substantive constitutional issue misapprehends our precedent.

**I.**

Nothing in North Florida Women's or T.W. supports the majority's jurisdictional claim. The majority asserts that the First District misapplied North

Florida Women's and T.W. "regarding strict scrutiny review of statutes that infringe on the right of privacy." Majority op. at 2 n.1. But the First District did not make any conclusions regarding the standard of judicial review applicable to statutes that infringe on the right of privacy. Instead, the First District addressed the conditions that must be met by a party seeking preliminary injunctive relief as well as the requirements applicable to orders granting such relief and ruled that the trial court's injunction order was both factually and legally deficient. The First District did so without determining the standard of judicial review or reaching the merits on the underlying constitutional challenge.

Ignoring what the First District's opinion actually says, the majority claims that the First District "misapplied and misconstrued our precedent by placing the initial evidentiary burden on Petitioners to prove a 'significant restriction' on Florida's constitutional right of privacy before subjecting the Mandatory Delay Law to strict scrutiny." Majority op. at 2. The majority thus moves seamlessly from a misconstruction of the First District's opinion to a misconstruction of our precedents.

This Court only applies strict scrutiny review to a statute regulating the right to abortion if the statute imposes a "significant restriction" on the right to abortion. In T.W. we "held that (a) if a legislative act imposes a significant restriction on a woman's (or minor's) right to seek an abortion, the act must further a compelling

State interest through the least intrusive means." North Florida Women's, 866 So. 2d at 621 (emphasis added). Subsequently, in North Florida Women's we "focus[ed] on two key questions addressed by the [trial] court. (1) Does the Parental Notice Act impose a significant restriction on a minor's right of privacy? And if so, (2) does the Act further a compelling State interest through the least intrusive means?" Id. at 631 (emphasis added). Indeed, even the majority appears to acknowledge that the Court in T.W. required that there be a significant restriction imposed on the right to abortion before applying strict scrutiny. See Majority op. at 18-19. In contrast, if the statute imposes an "insignificant burden" on the right to abortion, this Court applies—at most—intermediate scrutiny. See T.W., 551 So. 2d at 1193 (explaining that "[i]nsignificant burdens" on the right to abortion "must substantially further important state interests"). Therefore, the First District's statement that "[t]he trial court's failure to make sufficient factually-supported findings about whether the law imposes a significant restriction . . . renders the trial court's sparse legal analysis and conclusions unsupportable and the injunction deficient, and hampers meaningful appellate review," Gainesville Woman Care, 187 So. 3d at 282, is not inconsistent with and does not misapply North Florida Women's or T.W.

The majority claims that the First District "misinterpreted and misconstrued our precedent concerning the right of privacy by requiring, on remand, that the trial

court consider a list of speculative state interests, none of which this Court has ever recognized as compelling." Majority op. at 3-4. But the First District simply stated that "[t]he trial court's failure to make sufficient factually-supported findings . . . about the State's [asserted] compelling interests[] renders the trial court's sparse legal analysis and conclusions unsupportable and the injunction deficient, and hampers meaningful appellate review." Gainesville Woman Care, 187 So. 3d at 282. The majority fails to explain how the First District "misinterpreted and misconstrued our precedent," majority op. at 3, by requiring the trial court to address on remand the interests alleged by the State. The majority also fails to cite any precedent establishing that these interests are purely "speculative" and can never be "compelling." Majority op. at 4.

**II.**

The First District correctly decided this case on procedural grounds because the trial court's temporary injunction order is factually deficient. The majority acknowledges that "competent, substantial evidence" must support each of the four conclusions necessary to justify entry of a temporary injunction. Majority op. at 43; see North Florida Women's, 866 So. 2d at 615 ("Because the trial court properly applied the controlling law as set forth in T.W. and because its findings are supported by competent substantial evidence, we sustain its ruling."). According to the majority, "the challengers did present evidence . . . that the

- 47 -

Mandatory Delay Law would [impede a woman's ability to terminate her pregnancy for at least an additional twenty-four hours,] result in additional costs and additional trips to the physician[,] and that any delay could affect the type of procedure being performed." Majority op. at 3. But the trial court's temporary injunction order is not supported by <u>any</u> evidence, much less competent and substantial evidence. As the trial court explained in its order: "No witnesses were presented at the scheduled [evidentiary] hearing, and no affidavits or verified statements or declarations were offered into evidence. There was no legislative history or other evidence presented to this [c]ourt." <u>Gainesville Woman Care, LLC v. State</u>, No. 15-CA-1323, at 11 (Fla. 2d Cir. Ct. July 1, 2015) (Corrected Order Granting Plaintiffs' Motion for Temporary Injunction).[6] Notably, Dr. Curry's declaration—the "only evidence" before the trial court—was never offered into evidence. <u>Id.</u> at 10. The majority thus errs in concluding that

> the trial court's order correctly found, <u>based on the evidence presented at the temporary injunction hearing</u>, that there is a substantial likelihood that the Mandatory Delay Law is unconstitutional as a

---

6. The trial court's order states that "[t]he parties agreed that the [c]ourt was to consider the pleadings, together with the declarations filed with Plaintiffs' motion and supplemental reply, and that the parties were authorized but not required to present any witnesses or other evidence at [the evidentiary hearing]." <u>Gainesville Woman Care, LLC v. State</u>, No. 15-CA-1323, at 1 (Fla. 2d Cir. Ct. July 1, 2015) (Corrected Order Granting Plaintiffs' Motion for Temporary Injunction). Nonetheless, it is not clear from the record on appeal that the State agreed that the trial court was to consider Plaintiffs' pleadings and declarations as evidence, or that such documents meet the evidentiary requirements of Florida law.

- 48 -

> violation of Florida's fundamental right of privacy and consequently that Petitioners established a substantial likelihood of success on the merits in this case.

Majority op. at 38 (emphasis added).  The majority further errs in concluding that "[t]he trial court's findings with respect to all four of the prongs of the temporary injunction test were supported by competent, substantial evidence" and "the trial court had the proper evidentiary basis to issue a temporary injunction in this case." Majority op. at 43.

The First District also correctly decided this case on procedural grounds because the trial court's temporary injunction order is legally deficient.  In order to obtain a temporary injunction, the party seeking the injunction "must satisfy a four-part test under Florida law: 'a substantial likelihood of success on the merits; lack of an adequate remedy at law; irreparable harm absent the entry of an injunction; and that injunctive relief will serve the public interest.' "  Liberty Counsel v. Florida Bar Bd. of Governors, 12 So. 3d 183, 186 n.7 (Fla. 2009) (quoting Reform Party of Fla. v. Black, 885 So. 2d 303, 305 (Fla. 2004)).  "Clear, definite, and unequivocally sufficient factual findings must support each of the four conclusions necessary to justify entry of a preliminary injunction."  City of Jacksonville v. Naegele Outdoor Advert. Co., 634 So. 2d 750, 754 (Fla. 1st DCA 1994) (Naegele I), approved, 659 So. 2d 1046 (Fla. 1995) (Naegele II).  If a temporary injunction is "to be subject to meaningful review, an order granting a temporary injunction

must contain more than conclusory legal aphorisms" and "do more than parrot each tine of the four-prong test." Naegele II, 659 So. 2d at 1048 (quoting Naegele I, 634 So. 2d at 753-54); see Fla. R. Civ. P. 1.610(c) ("Every injunction shall specify the reasons for entry . . . .").

The trial court's order is legally deficient because it does not contain any factual findings—much less sufficient factual findings—regarding the irreparable harm or public interest prongs of the preliminary injunction test.[7]  The order merely contains the following conclusory statement: "Plaintiffs have shown . . . that irreparable harm will result if the [Mandatory Delay Law] is not enjoined . . . and that the relief requested will serve the public interest." Gainesville Woman Care, LLC v. State, No. 15-CA-1323, at 11 (Fla. 2d Cir. Ct. July 1, 2015) (Corrected Order Granting Plaintiffs' Motion for Temporary Injunction).  With respect to the substantial likelihood of success on the merits prong, the order is legally deficient because it fails to make sufficient factually supported findings about whether the Mandatory Delay Law imposes a significant restriction on the right to abortion, and about the State's asserted compelling interests.  The order is also legally deficient because it improperly conflates three of the four prongs of the preliminary injunction test and, in doing so, renders meaningless the irreparable

---

7. The State conceded the lack of an adequate remedy prong below.

harm and public interest prongs. See id. at 3-4 (concluding that a finding of a substantial likelihood of success on the merits provides the necessary support for the irreparable harm and public interest prongs). Further, the order is legally deficient because it fails to address the legal requirements for a facial constitutional challenge to a statute.

The majority concedes that the trial court's order does not contain any factual findings regarding the public interest prong. See majority op. at 40. Nevertheless, the majority concludes that "[i]n light of finding that the Mandatory Delay Law is likely unconstitutional . . . it would be specious to require, as the First District suggests, that the trial court make additional factual findings that enjoining the law would also be in the public interest." Id. The majority's reasoning fundamentally misapprehends the four-prong test for a preliminary injunction. Factual findings must support each of the four conclusions necessary to justify entry of a preliminary injunction. Naegele I, 634 So. 2d at 754; see Naegele II, 659 So. 2d at 1048. The majority thus renders meaningless the public interest prong by turning the four-prong test for a preliminary injunction into a three-prong test.

## III.

I disagree with the majority's resolution of the substantive constitutional issue. The majority claims that "there is no threshold requirement that a petitioner

must show by 'sufficient factual findings' that a law imposes a significant restriction on a woman's right" to abortion before strict scrutiny applies because statutes regulating the right to abortion implicate the right of privacy. Majority op. at 24. But the majority's claim cannot be reconciled with this Court's precedent imposing such a threshold requirement. In North Florida Women's and T.W., this Court only applied strict scrutiny to statutes regulating the right to abortion after determining that each statute imposed a "significant restriction" on the right to abortion. See North Florida Women's, 866 So. 2d at 631-32; T.W., 551 So. 2d at 1194-95. The majority simply cannot explain why this Court found it necessary to conclude—before applying strict scrutiny review—that the statutes at issue in both of those cases imposed a "significant restriction" on the right to abortion if the only relevant inquiry is whether a statute regulating the right to abortion furthers a compelling state interest through the least restrictive means. This Court has no evidence before it that a twenty-four hour waiting period is a significant restriction on the right to abortion. All we have are the pleadings—which do not constitute evidence—and Dr. Curry's speculations that a duly-enacted law additionally burdens the right to abortion. The majority's unjustifiable departure from North Florida Women's and T.W. does not satisfy any level of scrutiny.

The majority claims that "[p]ut into the appropriate context, it is clear that T.W. in no way created a threshold requirement that a challenger must prove

- 52 -

through sufficient, factually supported findings that a law imposes a significant restriction on a woman's right of privacy before the law is reviewed under strict scrutiny." Majority op. at 23. The majority's claim cannot be reconciled with T.W., which explicitly distinguishes between statutes that impose "significant restrictions" on the right to abortion and statutes that impose "insignificant burdens" on the right to abortion:

> Under Florida law, prior to the end of the first trimester, the abortion decision must be left to the woman and may not be significantly restricted by the state. Following [the first trimester], the state may impose significant restrictions only in the least intrusive manner designed to safeguard the health of the mother. Insignificant burdens during [the first or second trimester] must substantially further important state interests.

T.W., 551 So. 2d at 1193 (emphasis added) (footnote omitted). T.W. thus makes clear beyond any doubt that statutes imposing "significant restrictions" on the right to abortion are subject to strict scrutiny while statutes imposing "insignificant burdens" on the right to abortion are not.

The majority claims that "the significant restriction requirement that the State maintains is appropriate would equate the Florida constitutional inquiry in the termination of pregnancy context to the federal 'undue burden' test." Majority op. at 23. But this assertion flies in the face of what the Court said in T.W. before the federal undue burden test existed. In Planned Parenthood of Southeastern Pennsylvania v. Casey, 505 U.S. 833 (1992), "a plurality of the Court abandoned

- 53 -

the 'strict' scrutiny standard in favor of the less stringent 'undue burden' standard." North Florida Women's, 866 So. 2d at 634. "Under the 'undue burden' standard, a government regulation cannot have the purpose or effect of placing a substantial obstacle in the path of a woman seeking an abortion of a nonviable fetus." Id. at 634 n.46. In North Florida Women's we rejected the undue burden standard and maintained strict scrutiny review when reviewing statutes regulating the right to abortion. But we also maintained T.W.'s rule that strict scrutiny review of statutes regulating the right to abortion applies only if the statutes impose a "significant restriction" on the right to abortion.

The majority claims that "[a]ny law that implicates the right of privacy is presumptively unconstitutional, and the burden falls on the State to prove both the existence of a compelling state interest and that the law serves that compelling state interest through the least restrictive means." Majority op. at 24. But the majority fails to acknowledge that the extent of the right of privacy "must be considered in the context in which it is asserted and may not be considered wholly independent of those circumstances." Florida Bd. of Bar Examiners re Applicant, 443 So. 2d 71, 74 (Fla. 1983). As this Court has explained:

> Practically any law interferes in some manner with someone's right of privacy. The difficulty lies in deciding the proper balance between this right and the legitimate interest of the state. As the representative of the people, the legislature is charged with the responsibility of deciding where to draw the line. Only when that decision clearly transgresses private rights should the courts interfere.

- 54 -

Stall v. State, 570 So. 2d 257, 261 (Fla. 1990) (quoting T.W., 551 So. 2d at 1204 (Grimes, J., concurring in part, dissenting in part)). This Court's prior application of a threshold significant restriction requirement to challenges to statutes regulating the right to abortion simply recognizes that the right of privacy is not boundless.

The majority claims that "[t]he Mandatory Delay Law, as opposed to the Woman's Right to Know Act, turns informed consent on its head, placing the State squarely between a woman who has already made her decision to terminate her pregnancy and her doctor who has decided that the procedure is appropriate for his or her patient." Majority op. at 27. But the majority takes an unreasonably narrow view of the purpose of informed consent. This Court has acknowledged that the State has a compelling interest in safeguarding an individual's "bodily integrity and patient autonomy" by "prohibit[ing] termination of pregnancy procedures from being performed or induced unless either the referring physician or the physician performing the procedure first obtains informed and voluntary written consent from the patient." State v. Presidential Women's Ctr., 937 So. 2d 114, 115-16 (Fla. 2006). The Mandatory Delay Law enhances informed consent by affording a woman sufficient time to privately consider required relevant information concerning "the medical risks of terminating or not terminating a pregnancy." Id. at 119. The Mandatory Delay Law also enhances voluntary consent—and thereby

maintains the integrity of the medical profession—by making a woman's post-informed reflective time free from undue influence by a physician or clinic personnel.

The analysis employed by the majority gives no consideration to the full context of the decision to obtain an abortion. The plurality opinion in <u>Casey</u> describes this context:

> Abortion is a unique act. It is an act fraught with consequences for others: for the woman who must live with the implications of her decision; for the persons who perform and assist in the procedure; for the spouse, family, and society which must confront the knowledge that these procedures exist, procedures some deem nothing short of an act of violence against innocent human life; and, depending on one's beliefs, for the life or potential life that is aborted.

<u>Casey</u>, 505 U.S. at 852. The majority ignores the reality that adequate reflection regarding such a uniquely consequential choice necessarily furthers the purpose of informed consent. "The idea that important decisions will be more informed and deliberate if they follow some period of reflection," <u>id.</u> at 885, is entirely reasonable.

> [I]n providing time for reflection and reconsideration, the waiting period helps ensure that a woman's decision to abort is a well-considered one . . . . It "is surely a small cost to impose to ensure that the woman's decision is well considered in light of its certain and irreparable consequences on fetal life, and the possible effects on her own."

<u>Id.</u> at 969-70 (quoting <u>City of Akron v. Akron Ctr. for Reprod. Health, Inc.</u>, 462 U.S. 416, 474 (1983) (O'Connor, J., dissenting)). Although we have rejected

Casey's undue burden standard, the reasoning of Casey regarding the purpose of informed consent in the abortion context is independent of that standard. And that reasoning simply recognizes the obvious.

The majority claims that "the trial court did not err in not explicitly deciding the disputed issue of what standard is appropriate," majority op. at 43, for a facial constitutional challenge to a statute regulating the right to abortion because "[t]he trial court's finding that the Mandatory Delay Law imposes a significant restriction on all women's fundamental right of privacy, by its plain terms, is sufficient to support an injunction barring the application of the law in its entirety." Majority op. at 42. But the trial court's temporary injunction order will be searched in vain for any finding that the Mandatory Delay law imposes a "significant restriction" on the right to abortion. Regardless, the majority fails to acknowledge that—as a matter of Florida law—the no-set-of-circumstances test standard applies to Petitioners' facial constitutional challenge. See, e.g., Abdool v. Bondi, 141 So. 3d 529, 538 (Fla. 2014) ("For a statute to be held facially unconstitutional, the challenger must demonstrate that no set of circumstances exists in which the statute can be constitutionally applied."); Florida Dept. of Revenue v. City of Gainesville, 918 So. 2d 250, 256 (Fla. 2005) ("[A] determination that a statute is facially unconstitutional means that no set of circumstances exists under which the statute would be valid."); see also Cashatt v. State, 873 So. 2d 430, 434 (Fla. 1st

DCA 2004) ("A facial challenge to a statute is more difficult than an 'as applied' challenge, because the challenger must establish that no set of circumstances exists under which the statute would be valid."). Based on the record here, there is no basis for concluding that Petitioners have established a likelihood that they will prevail in meeting their heavy burden to maintain a successful facial challenge in this case.

POLSTON, J., concurs.

Application for Review of the Decision of the District Court of Appeal – Constitutional Construction

    First District - Case No. 1D15-3048

    (Leon County)

Julia Kaye and Susan Talcott Camp of American Civil Liberties Union Foundation, New York, New York; Benjamin James Stevenson of American Civil Liberties Union Foundation of Florida, Pensacola, Florida; Nancy Abudu of American Civil Liberties Union Foundation of Florida, Miami, Florida,

    for Petitioner Gainesville Woman Care, LLC

Autumn Katz of Center for Reproductive Rights, New York, New York,

    for Petitioner Medical Students for Choice

Richard Errol Johnson of the Law Office of Richard E. Johnson, Tallahassee, Florida,

    for Petitioners

Pamela Jo Bondi, Attorney General, and Denise Mayo Harle, Deputy Solicitor General, Tallahassee, Florida,

- 58 -

for Respondents

Catherine Millas Kaiman, Coral Gables, Florida,

      for Amici Curiae Experts and Organizations Supporting Survivors of Intimate Partner Violence, Sexual Assault, and Trafficking

Elliot H. Scherker, Julissa Rodriguez, Stephanie Lauren Varela, and Katherine Marie Clemente of Greenberg Traurig, P.A., Miami, Florida,

      for Amicus Curiae National Abortion Federation

Angela Coin Vigil of Baker & McKenzie LLP, Miami, Florida; Jaclyn Pampel of Baker & McKenzie LLP, Palo Alto, California; and Catherine Y. Stillman of Baker & McKenzie LLP, New York, New York,

      for Amicus Curiae Bioethicists of Florida

Matthew John Conigliaro of Carlton Fields Jorden Burt, P.A., Tampa, Florida,

      for Amicus Curiae Florida Right to Life, Inc.

Stephen Craig Emmanuel of Ausley McMullen, Tallahassee, Florida,

      for Amici Curiae Pellegrino Center for Clinical Bioethics, National Catholic Bioethics Center, Catholic Medical Association, and Florida Conference of Catholic Bishops

David Charles Gibbs, III of National Center for Life and Liberty, Largo, Florida,

      for Amici Curiae Concerned Women for America and The National Legal Foundation

Mathew Duane Staver, Anita Leigh Staver, Horatio Gabriel Mihet, and Roger K. Gannam of Liberty Counsel, Orlando, Florida,

      for Amici Curiae American College of Pediatricians and American Association of Pro-life Obstetricians and Gynecologists