IN THE DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FIFTH DISTRICT

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED


RALPH GRAHAM AND NICHOLE RENE GRAHAM,

     Appellants,

                                              Case No.  5D21-2451
  v.                                     LT Case No. 2020-CA-002177


CHERYL BATTEY AND ROLAND TUCKER,

     Appellees.

_____/

Opinion filed September 16, 2022

Nonfinal Appeal from the Circuit Court
for Osceola County,
Robert J. Egan, Judge.

Megan L. Garcia and Kene Henry
Anusionwu, of Law Offices of K.H.A.,
Windermere, for Appellants.

Ryan James Vescio and Alexander
S. Douglas, II, of Shuffield, Lowman
& Wilson, P.A., Orlando, for Appellees.


EDWARDS, J.

Appellants, Ralph and Nichole Graham, appeal the non-final order granting a temporary injunction in favor of Appellee, Cheryl Battey.[1]  This Court has jurisdiction.  Fla. R. App. P. 9.130(a)(3)(B).  For the following reasons, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion, including entry of an amended temporary injunction which shall, inter alia, require Appellee to post an appropriate injunction bond.

## Background Facts

The underlying lawsuit concerns the use and occupancy of a piece of property with a main house and a smaller in-law house.  Appellee is the record title owner of the property as shown in a recorded deed.  Appellants are the son-in-law and daughter of Appellee.  At one time, the parties apparently enjoyed good relationships.  There were discussions and vague oral agreements regarding Appellants being allowed to live in the main house in return for, inter alia, contributing to the purchase of the property and contributing to the monthly mortgage payments.  Appellee was to live in the in-law house and was to receive water and electricity from the main house.  There was no written document spelling out the terms of any of these

---

[1] Roland Tucker was Ms. Battey's husband, her co-plaintiff, and an Appellee.  However, he passed away.

2

supposed agreements.[2]  Appellants did come to reside in the main house while Appellee resided in the in-law house.

Eventually, the parties' good relationships soured, and they were unable to peacefully coexist on the property.  The parties came to disagree about nearly every aspect of their respective rights and obligations concerning the property.  Appellee gave Appellants written notice to move out of the main house based on her allegations that Appellants lived there pursuant to an oral, month-to-month lease and then sued to evict them.  Appellants counterclaimed, alleging that Appellee had breached a contract to transfer the property to them, less the in-law house and property surrounding it where Appellee lived.  Further, Appellants alleged that Appellee had orally agreed to devise the entire property to Appellants, effective when she passed away.

Next, Appellee moved for a temporary injunction to enjoin Appellants from allegedly: (1) making further material alterations to the main house; (2) committing waste of the property; (3) interfering with or interrupting Appellee's utility services to the in-law house; (4) interfering with Appellee's

---

[2] The trial court described an unsigned document that was represented by Appellee to be a written lease; however, it was not legible and lacked sufficient detail to set forth the terms and conditions required of an enforceable lease.

3

access to the property; and (5) destroying, taking, and disturbing Appellee's personal property. Following an evidentiary hearing, the trial court granted the temporary injunction, which enjoined Appellants from the activities outlined in Appellee's motion.

## Standard of Review

"The standard of review of trial court orders on requests for temporary injunctions is a hybrid. To the extent the trial court's order is based on factual findings, we will not reverse unless the trial court abused its discretion; however, any legal conclusions are subject to de novo review." *Gainesville Woman Care, LLC v. State*, 210 So. 3d 1243, 1258 (Fla. 2017) (citation omitted). A trial court's factual findings on the elements of a temporary injunction are reviewed for competent, substantial evidence. *Fla. Dep't of Health v. Florigrown, LLC*, 317 So. 3d 1101, 1110 (Fla. 2021) (citation omitted).

## Analysis

"The issuance of a preliminary injunction is an extraordinary remedy which should be granted sparingly." *Yardley v. Albu*, 826 So. 2d 467, 470 (Fla. 5th DCA 2002). "A temporary injunction may be entered if the party seeking the injunction establishes the following criteria: (1) the likelihood of irreparable harm; (2) the unavailability of an adequate remedy at law; (3) a

substantial likelihood of success on the merits; and (4) considerations of the public interest." *Id*. "Because the entering of a temporary injunction is an extraordinary remedy, strict compliance with the provisions of [Florida Rule of Civil Procedure 1.610] is required." *Id*. Thus, "compliance with the rule requires the trial court to set forth sufficient factual findings to support each of the criterion [sic] that must be established to entitle the party to a preliminary injunction." *Id*. Where a temporary injunction is generally supported by facts and law, the court of appeal can affirm it in part while remanding with instructions to strike, add, or revise terms and conditions to cure any noncompliance. *Coscia v. Old Fla. Plantation, Ltd.*, 828 So. 2d 488, 490 (Fla. 2d DCA 2002); *see also Animal Rts. Found. of Fla., Inc. v. Siegel*, 867 So. 2d 451, 463 (Fla. 5th DCA 2004) (Sawaya, C.J., concurring in part and dissenting in part) ("If part of a temporary injunction is improper and the remaining portions of the injunction are proper, the appellate court may affirm the injunction and strike the improper provisions." (citing *Coscia*, 828 So. 2d at 488)).

We hold that the trial court's order contains sufficient factual findings as to the first two elements as to certain conduct. Specifically, it found that Appellants' continued interruption of water and electrical services to Appellee in the in-law house would constitute irreparable harm for which there is no

5

legal remedy. Appellee offered evidence to the trial court that Appellants had intentionally switched off her electricity and put a lock on the water system controls without giving Appellee a key. Given the circumstances here, namely that Appellee had no other source of electricity or potable water, depriving her of those necessities of modern life would result in irreparable harm. To that extent, the temporary injunction is affirmed.

The temporary injunction also prohibits Appellants from interfering with Appellee's ingress and egress to the property and more specifically to the common areas. Appellants do not argue a lack of competent, substantial evidence to support Appellee's claim and the court's order. Instead, they first argue that Appellee has no right to access the main house or property even if she were determined to be the landlord. Second, they argue that the injunction lacks the necessary specificity as to exactly what ingress and egress is covered. The trial court's temporary injunction essentially grants Appellee the right to access the common areas of the property without interference from Appellants. The injunction does not grant Appellee access to the interior of the main house. Further, the trial court's order notes that Appellants replaced the locks on the main house to exclude Appellee therefrom and specifically permits maintenance of that status quo.

6

Accordingly, we affirm the temporary injunction to the extent it protects Appellee's rights of ingress and egress.

The trial court also enjoined Appellants from making material alterations to the main house and property. The trial court's findings that Appellants, without Appellee's consent, changed locks on the main house, removed locks from and otherwise damaged gates on the property, materially altered the main house by attaching cameras to its exterior, removed or cut shrubbery, and failed to maintain the swimming pool are supported by competent, substantial evidence. Under the facts and circumstances developed here, the loss or damage occasioned by each act listed by the trial court is the epitome of things that can be replaced or repaired. Locks can be replaced, gates can be rehung, cameras can be removed with attachment points filled and painted, the swimming pool can be repaired or renewed, and the shrubs can be replaced as needed. Therefore, there was no competent, substantial evidence of irreparable harm caused by those material alterations. *See Stand Up for Animals, Inc. v. Monroe Cnty.*, 69 So. 3d 1011, 1013 (Fla. 3d DCA 2011) ("[I]rreparable harm for the purposes of an injunction is not established where the harm can be compensated for adequately by money damages." (citation omitted)).

Furthermore, the trial court's order enjoining Appellants from materially altering the property fails to specify exactly what action is prohibited. Florida Rule of Civil Procedure 1.610(c) provides that an injunction "shall describe in reasonable detail the act or acts restrained without reference to a pleading or another document . . . ." In an often cited opinion, the Second District succinctly explained rule 1.610(c)'s requirements:

> An injunctive order should never be broader than is necessary to secure the injured party, without injustice to the adversary, relief warranted by the circumstances of the particular case. An injunctive order should be adequately particularized, especially where some activities may be permissible and proper. Such an order should be confined within reasonable limitations and phrased in such language that it can with definiteness be complied with, and one against whom the order is directed should not be left in doubt as to what he is required to do.

*Florio v. State ex rel. Epperson*, 119 So. 2d 305, 310 (Fla. 2d DCA 1960) (internal citations omitted). We hold that the trial court's prohibition on material alterations could leave Appellants in doubt about what is required of them and also note that the trial court's order enjoining Appellants from committing waste suffers from the same lack of specificity.[3]

Thus, on remand, the trial court is ordered to strike from the temporary injunction the prohibition on Appellants making material alterations to the

---

[3] With regard to enjoining waste, lack of specificity is the only argument Appellants raised in their initial brief, thereby waiving any other arguments. *See Rosier v. State*, 276 So. 3d 403, 406 (Fla. 1st DCA 2019).

property unless it makes findings as to material alterations that would truly cause irreparable harm and sets forth specifically what is enjoined.  If the trial court intends in the amended injunction to enjoin Appellants from committing waste, it must specifically describe what acts or omissions constitute waste and are therefore prohibited.

Additionally, Appellants argue that the trial court's order enjoining them from destroying, taking, and disturbing Appellee's personal property cannot be sustained because irreparable harm was not established.  Appellants assert that money damages are available to replace or repair any such personal property.  "[A]n injunction will not be granted for the return or retention of personal property unless the property is peculiar or unique." *Esposito v. Horning*, 416 So. 2d 896, 897 (Fla. 4th DCA 1982).  Equity can intercede when the personal property is of unique character and value, such as an antique, and there is no adequate remedy at law.[4]  *See Mangus v. Porter*, 276 So. 2d 250, 251 n.1 (Fla. 3d DCA 1973).  The subject injunction does not describe the nature or character of Appellee's personal property. On remand, the trial court shall amend the temporary injunction by striking

---

[4] *See DiabloSport, LLC v. Granatelli Motor Sports, Inc.*, No. 6:05-cv-312, 2005 WL 2465019 (M.D. Fla. Oct. 6, 2005) (finding that Florida's jurisprudence regarding specific performance of contracts for personal property requires consideration of the injunctive factors of irreparable harm and no adequate remedy at law).

the provision prohibiting Appellants from destroying, taking, and disturbing Appellee's personal property, unless the trial court sets forth its findings that Appellee's at-risk personal property is essentially irreplaceable because of its described unique character or peculiar nature.

Regarding the third element, Appellee's likelihood of success on the merits, the trial court's order details its findings that Appellee has a substantial likelihood of success on the merits. In the order granting the temporary injunction, the trial court notes that in the absence of any duly executed legal agreement, Florida's statute of frauds concerning real estate transactions and testamentary formalities pertaining to transfer of property upon death will likely nullify Appellants' counterclaims against Appellee who is the record title holder of the property.

For the fourth element, considerations of public interest, the trial court found that nothing in the injunction would be adverse to the public interest, thereby satisfying the fourth element necessary to entitlement to a temporary injunction. Indeed, the trial court found that repeating its prior order that the parties cooperate in repairing the swimming pool would actually be in the public interest. Thus, we hold that both findings are supported by competent, substantial evidence.

Lastly, Appellants justifiably complain about the trial court's failure to require Appellee to post a bond. Florida Rule of Civil Procedure 1.610(b) is clear in its mandate that "[n]o temporary injunction shall be entered unless a bond is given by the movant in an amount the court deems proper, conditioned for the payment of costs and damages sustained by the adverse party if the adverse party is wrongfully enjoined." "Under the compulsory language of the rule, the trial court has no discretion to dispense with the requirement of a bond." *Pinder v. Pinder*, 817 So. 2d 1104, 1105 (Fla. 2d DCA 2002).[5]

Indeed, the order granting the temporary injunction makes no mention of a bond. Nevertheless, the lack of a bond does not invalidate the injunction as Appellants claim. *See Ralicki v. 998 SW 144 Ct. Rd, LLC*, 254 So. 3d 1155, 1157 (Fla. 5th DCA 2018) ("Contrary to [the appellants'] position, though, the failure to set a bond does not invalidate the injunction." (citing *Offshore Marine Towing, Inc. v. Sea Tow Servs. Int'l, Inc.*, 778 So. 2d 510

---

[5] There are certain exclusions to the bond requirement, but none are applicable here. *See* Fla. R. Civ. P. 1.610(b) (noting bond requirement may be dispensed when issued on pleadings of a municipality or the state or any officer, agency, or political subdivision thereof; bond prohibited when injunction is issued solely to prevent physical injury or abuse of a natural person); *Tri-Plaza Corp. v. Field*, 382 So. 2d 330, 331 (Fla. 4th DCA 1980) (stating bond requirement can be waived if showing is made that movant has financial inability to obtain bond).

11

(Fla. 4th DCA 2001))).  Accordingly, we remand this matter for the trial court to conduct an evidentiary hearing regarding the appropriate amount of bond Appellee must post. *See id.*

Accordingly, as set forth above, we affirm in part, reverse in part, and remand for further proceedings in accordance with this opinion.

AFFIRMED, in part; REVERSED, in part; and REMANDED.

LAMBERT, C.J., and COHEN, J., concur.