# Third District Court of Appeal

## State of Florida

Opinion filed January 31, 2024.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D23-1082
Lower Tribunal No. 23-2633
_____

**Jay R. Chernoff,**
Appellant,

vs.

**City of North Miami Beach, et al.,**
Appellees.

An Appeal from a non-final order from the Circuit Court for Miami-Dade County, Peter R. Lopez, Judge.

Reiner & Reiner, P.A., and David P. Reiner, II; Kuehne Davis Law, P.A., and Benedict P. Kuehne, Michael T. Davis, and Johan Dos Santos; Michael A. Pizzi, Jr., P.A., and Michael A. Pizzi, Jr., for appellant.

Brodsky Fotiu-Wojtowicz, PLLC, and Benjamin H. Brodsky and Max Eichenblatt, for appellee, Commissioner Michael Joseph.

Before HENDON, MILLER, and LOBREE, JJ.

HENDON, J.

Jay R. Chernoff, Commissioner for the City of North Miami Beach ("Appellant" or "Commissioner Chernoff"), seeks to vacate the order of the lower court and remand with directions to approve the decision of the City Commission to remove Commissioner Michael Joseph ("Commissioner Joseph") from office for violation of the required attendance rule. We affirm.

In February 2023, Commissioner Chernoff filed a complaint against Commissioner Joseph seeking to remove him from office. Commissioner Chernoff alleged that Commissioner Joseph failed to attend a regular commission meeting for a period of 120 days, from October 2022 to February 2023, and his seat was thus automatically vacated pursuant to section 2.5 of the City Charter.[1] In an amended complaint filed on March 13, 2023, Commissioner Chernoff added Commissioner Fleurimond to the

---

[1] Section 2.5 of the North Miami Beach Charter provides:

Sec. 2.5 - Quorum and Attendance of the City Commission.
A quorum of the City Commission at any regular or special meeting shall consist of five members. Except as otherwise provided herein, the affirmative vote of a majority of the quorum present shall be required upon any matter submitted for consideration of the Commission. If any Commissioner has failed to attend a meeting of the City Commission for a period of one hundred and twenty (120) days, the seat of such Commissioner shall automatically become vacant.

https://library.municode.com/fl/north_miami_beach/codes/code_of_ordinances?nodeId=PTICH.

action and sought his removal based on the same section of the Charter.[2]

Commissioners Joseph and Fleurimond filed a joint counterclaim in response, arguing that the Charter language "failed to attend" starts the 120-day period from the first non-attended meeting. They argue that as there was no meeting in November, and because Commissioner Joseph missed the December 20, 2022 meeting because of illness, the 120-day period began from the missed December meeting.[3]

Commissioner Chernoff and Mayor DeFillipo sought to hold a vote at the May 16, 2023 Commission meeting to determine if Commissioners Joseph and Fleurimond had vacated their seats pursuant to the Charter.

---

[2] Commissioner Chernoff claims that despite Commissioner Fleurimond's attendance at the Commission meeting on December 20, 2022, this attendance should not count because he left the meeting before a final vote on the City Attorney's termination. Commissioner Chernoff claims that this should not count as an "attended" meeting because, in his view, Fleurimond violated the City's Code of Ordinances requiring commissioners to remain at meetings barring an emergency. Using the same application of the Charter provision, Commissioner Chernoff sought summary removal of Commissioner Fleurimond for "failure to attend" a meeting from October 18, 2022 to March 13, 2023.

[3] Commissioner Fleurimond did not attend the January 17, 2023 meeting for the same reasons as Commissioner Joseph, in protest of the continued tenure of Mayor DeFillipo and to prevent a vote to oust the City Attorney. Both Commissioners Joseph and Fleurimond attended commission meetings in February, March, and April 2023.

Commissioners Joseph and Fleurimond[4] filed an emergency motion for injunctive relief, seeking to enjoin the commission from so voting. The trial court denied relief without prejudice.

On May 16, 2023, the City Commission met; six of the seven commission members were present at the meeting. Commissioner Chernoff and Commissioner Fleurimond recused themselves from the meeting prior to public discussion on the vote due to conflict of interest, leaving only four commission members present. After public discussion, the remaining members of the City Commission voted three-to-one in favor of vacating Commissioner Joseph's seat, effectively removing him from office.

Commissioner Joseph filed a renewed emergency motion for temporary injunction to enjoin the City from wrongfully excluding him from his elected office and from holding a special election to replace his seat. The trial court held an evidentiary hearing, concluded that Commissioner Joseph had established all of the elements required for a temporary injunction, and granted relief. In its order, the trial court determined that a quorum of commissioners did not exist at the May 16, 2023 vote regarding

---

[4] On May 19, 2023, Commissioner Chernoff voluntarily dismissed his claims against Commissioner Fleurimond, with prejudice, and Commissioner Fleurimond voluntarily dismissed his counterclaims against Commissioner Chernoff, with prejudice.

4

Commissioner Joseph's seat. Of the six commissioners present, only four commission members voted on the issue as two commissioners had recused themselves for conflict of interest, and the City Charter provides that a quorum "shall" consist of five members. The trial court concluded that, "the recusal/disqualification of two Commission members in this case did not reduce the number of Commission members needed to satisfy the quorum requirement. Due to the lack of a quorum, the May 16, 2023 vote on whether Commissioner Joseph had vacated his position is VOID and of no effect." The trial court further determined that the Commission had no legal authorization to vote on the issue, and the vote was of no effect anyway as the Charter provides that a 120-day absence results in an automatic vacation of the commission seat.

Finally, the trial court concluded that the Commission's calculation of the 120-day time period was incorrect. City procedural precedent provided that the proper start time for calculating the 120-day period was from the date of the first missed meeting: in 2018, the Commission that existed at that time determined that another commissioner, Commissioner Pierre, had vacated his position for failure to attend a meeting for a 120-day period based on the recommendation of the City Attorney, who used the day

5

Commissioner Pierre first failed to attend a regular City Commission meeting to calculate the 120-day period.

The trial court found that neither the City nor its citizens are irreparably harmed by the temporary injunction; that Commissioner Joseph will be irreparably harmed without injunctive relief; Commissioner Joseph has no adequate remedy at law; the balance of all factors favor Commissioner Joseph; and public interest favors the relief ordered. The court ordered Commissioner Joseph to post a $1,000.00 bond. Commissioner Chernoff appeals.

"[T]he standard of appellate review with respect to the interpretation of a charter or ordinance is de novo." Lacayo v. Versailles Gardens I Condo. Ass'n, Inc., 325 So. 3d 295, 297 (Fla. 3d DCA 2021) (quoting Martinez v. Hernandez, 227 So. 3d 1257, 1259 (Fla. 3d DCA 2017)). To the extent the decision to enter a temporary injunction involves an exercise of discretion, we defer to the trial court unless it has abused its discretion. See id. at 1258; Fla. Dep't of Health v. Florigrown, LLC, 317 So. 3d 1101, 1110 (Fla. 2021). Further, when there are no factual disputes in the record, the only issue for the appellate court to determine is the trial court's legal conclusion, which is reviewed de novo. Gainesville Woman Care, LLC v. State, 210 So. 3d 1243, 1258, 1265 (Fla. 2017).

6

Discussion

A quorum did not exist for the May 16, 2023 vote on Commissioner Joseph's seat. Six commissioners were present for the May 16 commission meeting, but two of them – Commissioner Joseph and Commissioner Chernoff – were obligated to recuse themselves from the vote on Commissioner Joseph's seat vacancy issue based on a conflict of interest, as both were named parties in the underlying lawsuit to determine that very issue. That left four voting commission members. The Charter specifically provides that a quorum of the City Commission at any regular or special meeting shall consist of five members. It is significant that the two non-voting commission members were recused, and did not merely abstain from voting. As recused commission members, they were not entitled to vote. As such, the remaining four voting-eligible members did not comprise a quorum.

Commissioner Chernoff argues that "members of a board <u>abstaining</u> from voting are counted for purposes of a quorum … although they may not necessarily by [sic] counted in determining whether an issue has been accorded a sufficient vote to constitute the action of a board," quoting <u>Shaughnessy v. Metropolitan Dade County</u>, 238 So.2d 466, 468 (Fla. 3d DCA 1970) (emphasis added). Commissioner Chernoff also cites an

7

Attorney General opinion that states in the body of the opinion the exception that "members of a legislative body vote on matters coming before them unless they have a conflict of interest," citing section 286.012, Florida Statutes, as amended by Ch. 75-208, Laws of Florida (effective October 1, 1975) (emphasis added).[5] See 67A C.J.S. Parliamentary Law §

---

[5] See Attorney General Opinion AGO 2008-39, which advises:

> This office has issued a number of opinions considering voting requirements when officials abstain from voting or are prohibited from voting. In Attorney General Opinion 74-160, this office concluded that where only four members of a five-member town commission are present at a meeting of that body, the adoption of a resolution requires the affirmative vote of three members irrespective of the fact that one of the members present abstained from voting. That opinion stated that "[t]he fact that one member abstained from voting has no effect on the statutory provision that the adoption of a resolution requires that affirmative vote of a majority of the members present."
>
> The conclusion in Attorney General Opinion 74-160, however, was based on the provisions of section 286.012, Florida Statutes, read together with section 112.3143, Florida Statutes, which, prior to the 1984 amendments to these statutes did not mandate a voting abstention in the case of a conflict, but afforded the officer a choice as to whether to abstain from voting or to vote and file a memorandum within 15 days disclosing the nature of his interest. The statute, prior to its 1984 amendment, did not prohibit a public officer from voting in any situation; after the 1984 amendment, a local public officer was prohibited from voting on those measures which inure to his special gain or which, to his knowledge inure to the special gain of any principal by whom he is retained.

5 ("Members disqualified because of interest cannot be counted for the purpose of making a quorum or a majority of the quorum.").

In the case at hand, the difference between recusal and abstention is dispositive. The two commission members who recused themselves did not have the legal right to vote on an issue directly related to the litigation they were party to; they did not merely abstain from voting while retaining the right to vote. This distinction, in combination with the Charter's specific mandatory provision for a five-member quorum, makes a difference in the legal determination of the validity of the commission's four-member vote.

> In Attorney General Opinion 85-40, this office considered the effect of the 1984 amendment to section 112.3143(3), Florida Statutes. <u>The amendment prohibited, rather than requiring a mere abstention, a public officer from voting in his official capacity on a matter in which he had a personal, private or professional interest and which inured to his special private gain</u> or that of a principal by whom he or she was retained. The opinion discusses the meaning of the term quorum and concludes that "a quorum is a certain number of a governing or legislative body who are <u>legally entitled to act</u>." (e.s.) <u>The opinion considers a scenario in which all five members of a municipality are present at a meeting but two members are prohibited by statute from voting on the matter under consideration. Thus, only three members of the town council are present who are legally entitled to act. Relying on the definitions of "quorum," the opinion concludes that the effect of the prohibition in section 112.3143, Florida Statutes, is to preclude those members who are prohibited from voting from being considered to be part of the quorum for that matter.</u>

https://www.myfloridalegal.com/ag-opinions/council-of-childrens-services-taxation-voting (footnotes omitted; emphasis added).

9

We conclude on de novo review of this issue that there was no quorum and the vote was invalid.

We next determine that the Commission's calculation of the start of the 120-day period was in error based on the plain language of the Charter. Section 2.5 of the Charter provides, in relevant part, that "[i]f any Commissioner has <u>failed to attend</u> a meeting of the City Commission for a period of one hundred and twenty (120) days, the seat of such Commissioner shall automatically become vacant." (Emphasis added). As the trial court explained,

> It is undisputed that Joseph attended a Commission meeting on October 18, 2022. In November of 2022, no Commission meeting was held. On December 20, 2022, a meeting was held and Joseph did not attend. He attended the March 20, 2023 Commission meeting. If, as contended by Commissioner Chernoff and the City, the 120-day period began to run the day after October 18, 2022, the last meeting that Joseph attended, then 120 days would have elapsed and Joseph's position would have become vacant. However, if the 120-day period began to run on December 20, 2022, the day of the first meeting that Joseph failed to attend, then 120 days did not elapse and his position would not have become vacant. The City Commission, in voting that Joseph vacated his position, necessarily calculated the period using the day after the last meeting that Joseph attended. This contradicts the plain language of Section 2.5 which requires a failure to attend a meeting, as one cannot fail to attend a meeting that does not exist.

10

After a full examination of the record and the Charter language, we conclude that the 120-day window starts to run from the date of the meeting that a commissioner failed to attend.

We decline to address the remaining issues on appeal.  Accordingly, we affirm.

Affirmed.